Commonwealth *v.* Martin, Appellant.

Argued October 8, 1930. Before Moschzisker, C. J., Frazer, Walling, Simpson, Kephart, Sadler and Schaffer, JJ.

*Louis F. McCabe,* with him *C. S. Patterson, Jr.,* for appellant.—It was reversible error for the court to permit the district attorney, on cross-examination of defendant, to question defendant concerning his relations with a Mrs. Gorman, daughter of one of the witnesses for the defense, in whose home defendant had been arrested.

The judge erred in overruling the motion of counsel for the defendant for the withdrawal of a juror: Wheeler v. Wallace, 19 N. W. 33.

*Bryan A. Hermes,* Assistant District Attorney, with him *John Monaghan,* District Attorney, for appellee, cited as to remarks of judge: Beardslee v. Twp., 188 Pa. 496; Com. v. Heffelfinger, 82 Pa. Superior Ct. 351;

Com. v. Sloat, 298 Pa. 10; Com. v. Schoenleber & Patterson, 96 Pa. Superior Ct. 76; Com. v. Legins, 285 Pa. 97; Com. v. Cicere, 282 Pa. 492; Com. v. Rothensies, 64 Pa. Superior Ct. 395.

OPINION BY MR. JUSTICE WALLING, November 24, 1930:

This appeal by the defendant, Thomas F. Martin, is from sentence of death imposed upon him on his conviction of the murder of C. Cameron Cook; the conviction being of first degree murder and the jury fixing the death penalty. Cook was a messenger of a bank situated on North Broad Street, known as the Bank of Philadelphia and Trust Company. On the morning of December 6, 1929, Cook left the bank and entered a bank truck, carrying in a black hand bag some $34,000 in currency, and was driven to the corner of Seventeenth and French Streets, Philadelphia. There he left the truck, taking with him the black bag and entered a subpost office, where he made a collection of $300, which he placed in his pocket. The evidence for the Commonwealth is that three men, including the defendant, had followed him from the bank in a Buick car and, as he returned to the truck, two of the men, being the defendant and another of the three, named McCaffery, not yet apprehended, left their car and approached Cook, whom the defendant grabbed, stuck a gun (revolver) in his back and said, "Stick 'em up," and before giving him an opportunity to do so turned him around and shot him in the head, the ball entering the right eye and causing instant death; that the defendant then grabbed the black bag, took the $300 from Cook's pocket, and with his companion reëntered the Buick car and was driven to near Sixty-third and Spruce Streets, where, in a room occupied by one of the robbers, they divided the money, burned the black bag and separated. The Commonwealth's evidence also is that another man named Maloney, who had formerly been employed at

the bank, was one of the conspirators in the plot to rob the messenger and on that morning was near the bank in a Hudson car and followed the Buick so as to aid in the escape of his confederates in the event the latter car was disabled.

Within two or three days, Maloney and another confederate named Mackenthun were apprehended, confessed their guilt (the former however, denying that he was present at the scene of the robbery), implicated Martin and took the officers to where their share of the stolen money ($17,000) was concealed. This was recovered and identified by markings on the bands. The crime was committed at about five minutes before ten o'clock a. m., in the presence of witnesses, three of whom, school children, identified Martin, two very positively, as the man who did the shooting. William Connelly, commanding officer of the detective bureau of Philadelphia, testified as to one of his interviews with Martin, as follows: "When he [Martin] came in, he took a seat alongside of me, smiling, and said, 'Old top, you have a lot of patience.' I said 'What do you mean by that remark?' He said, 'You know in your heart I committed this crime, but I have one chance in a million to beat it, and you don't blame me for taking that chance, do you?' I did not answer him. In a few seconds he continued: 'If I do go to the electric chair, I will go trying to make the public believe that the law has sentenced an innocent man for this crime.'" This was corroborated by the testimony of other detectives who heard the conversation. Maloney and Mackenthun, accomplices, testified to Martin's guilt.

The defendant, when called in his own behalf, denied participation in the crime and said he had no knowledge whatever thereof. He also testified that he slept the night of December 5th in his room at 452 North Fifty-Second Street, which he left at about ten o'clock on the morning of December 6th and that, after getting a light breakfast at a restaurant, he went to the home

of Mrs. Callanan at 665 North Conestoga Street, where he was a frequent visitor and where he spent the balance of the day and evening. Mrs. Callanan testified that he came to her home that morning at about 10:45 and remained as he stated. Two other witnesses testified to seeing defendant on the street in that neighborhood at about the time last stated. A witness called in rebuttal by the Commonwealth testified that defendant's bed at his room had not been slept in on the night of December 5th. That defendant was seen on the street and at Mrs. Callanan's at 10:45 that morning, if true, was not inconsistent with his presence at Seventeenth and French Streets at 9:55, but might throw doubt upon the Commonwealth's contention that the defendant was in the southwestern part of the city later that morning, where it is claimed the money was divided. The trial judge fairly submitted the question of the alibi to the jury and as to that no complaint is made. Honest witnesses might of course be mistaken as to the day or hour they saw a man at a place where he was a frequent visitor.

The evidence for the defendant as to where he was that morning prior to 10:45 a. m., is confined to his own testimony.

Complaint is made, however, as to certain alleged trial errors. There was no abuse of discretion in permitting the Commonwealth to cross-examine the defendant as to the frequency of his visits to Mrs. Callanan's or as to his meeting the latter's daughter there. The question simply sought to develop the intimacy of the defendant with the Callanan family, as it might affect the alibi, and did not ask the defendant to disclose any criminal conduct on his part, in contravention of the Act of March 15, 1911, P. L. 20. The extent of the cross-examination of a witness is largely in the discretion of the trial judge: Commonwealth v. Quaranta, 295 Pa. 264.

While Inspector Connelly was on the stand, defendant's counsel complained that the law had been violated by failing to take his client, when arrested, to the nearest police station, and the trial judge remarked, "There are a good many other provisions of the law"; to which defendant's counsel said, "All of them ought to be obeyed by the police." The district attorney replied, "And also by defendants," and the trial judge added, "Thou shalt not kill and thou shalt not rob." This remark was applicable to defendants in general and not confined to the particular defendant on trial. On reflection, the trial judge would doubtless conclude it was not in good taste, but we are not satisfied that it was harmful to the defendant, or of sufficient gravity to require the granting of the defendant's request for the withdrawal of a juror. Speaking for the court on this subject, in Beardslee v. Columbia Township, 188 Pa. 496, Mr. Justice MITCHELL says: "The Act of May 24, 1887, par. 3, P. L. 199,......authorizes exceptions to rulings, orders and remarks of the judge made in the hearing of the jury at any state of the proceedings. This is a provision of very doubtful wisdom, and under it the ordinary rule that the error assigned must appear to have been injurious to the appellant will be most rigidly applied." Unless substantial harm is apparent, or at least highly probable, a new trial will not be granted because of some unfortunate remark of the trial judge or district attorney. See Commonwealth v. Sloat, 298 Pa. 10; Commonwealth v. Torti et al. 283 Pa. 43; Commonwealth v. Cicere, 282 Pa. 492; Commonwealth v. Smith, 270 Pa. 583; Commonwealth v. Rothensies et al, 256 Pa. 337; Commonwealth v. Pennington, 249 Pa. 536; Commonwealth v. Combs, 216 Pa. 81; Commonwealth v. Heffelfinger, 82 Pa. Superior Ct. 351; 38 Cyc. 1316. Nevertheless, the trial judge and district attorney should refrain from making any uncalled for remarks tending to prejudice a defendant, especially in homicide cases.

The trial judge instructed the jury that, while the defendant was not bound when arrested to disclose, to those making the arrest, the alibi he set up in court, yet the fact that he did not might be considered by the jury if they saw proper to do so. This, as the trial judge intimated, was a matter of little moment, and, whether strictly accurate, we need not pause to inquire, for it was not such basic or fundamental error as can be raised under the general exception taken to the charge.

The motion for a new trial covers seven printed pages and embraces fifteen alleged reasons; twelve of them being separate alleged trial errors, some of which we have considered above. The refusal of this motion is assigned as one error. Of course, this cannot be done so as to raise the legal questions involved therein, as each alleged error must be separately assigned. That legal questions embraced in a motion for a new trial will not be considered on appeal unless separately assigned as error is familiar law. Mr. Justice KEPHART, speaking for the court, in McKee et al. v. Ward, 289 Pa. 414, 418, says: "Appellant urges the consideration of other matters, set forth in connection with the motion for a new trial, as additional reasons for reversing the judgment. While they may be germane to the motion for a new trial, in determining whether there was an abuse of discretion, they cannot be considered as substantive assignments of error, unless the reasons showing separate errors are incorporated in separate assignments with the exceptions taken in the court below: Duff v. Hamlin, 272 Pa. 245; First Church of Christ, Scientist, v. Meredith, 266 Pa. 263; Kahn v. Quaker City Cab Co., 264 Pa. 510, 512." See also Jaffe v. Lipsky Bros., 291 Pa. 470. The refusal of a new trial, in the instant case, discloses no abuse of discretion. In view, however, of its serious nature, we have carefully examined each of the twelve alleged trial errors and find no merit in any one of them, nor anything

that would require extended discussion had each been properly assigned.

The Commonwealth presented an unusually strong case, showing every element of first degree murder, which the defense was unable to satisfactorily answer, and the verdict as rendered was the logical result. The defendant had a fair trial with all his legal rights safeguarded.

The judgment is affirmed and the record is remitted for the purpose of execution.