Commonwealth ex rel. Firmstone, Appellant, *v.* Myers.

Submitted May 20, 1968.  Before BELL, C. J., MUS-
MANNO, JONES, EAGEN, O'BRIEN and ROBERTS, JJ.

*Nathaniel Firmstone*, appellant, in propria persona.

*Henry G. Hager, 3rd*, District Attorney, for appel-
lee.

OPINION BY MR. JUSTICE ROBERTS, October 3, 1968:

In 1951 appellant Nathaniel Firmstone was charged on two bills with the crimes of burglary and larceny (Bill No. 26, December Sessions, 1951), and aggravated assault and battery and robbery with an accomplice (Bill No. 27, December Sessions, 1951). He was tried and convicted on Bill No. 26, plead guilty to the charges on Bill No. 27, and was given consecutive sentences of ten to twenty years on each bill. These sentences were later vacated and appellant sentenced to life imprisonment under the Act of June 24, 1939, P. L. 872, §1108(b), 18 P.S. §5108(b). In 1964 a petition for habeas corpus was granted revoking the life sentence; appellant was then resentenced, receiving consecutive sentences of six to twelve years on Bill No. 27 (the guilty plea) and six to twenty years on Bill No. 26 (the trial).

Next, appellant commenced the present action in habeas corpus in which he attacked both convictions. Following an evidentiary hearing, the Court of Common Pleas of Lycoming County dismissed the petition. Firmstone appealed to the Superior Court, contesting only the conviction on Bill No. 26. That court affirmed, per curiam, Judge HOFFMAN filing a dissenting opinion joined by Judge SPAULDING. *Commonwealth ex rel. Firmstone v. Myers,* 211 Pa. Superior Ct. 496, 240 A. 2d 393 (1968). We granted allocatur.

It is uncontested that prior to his trial on Bill No. 26, appellant was given a preliminary hearing at which time he was unrepresented by counsel. Moreover, he was never told anything about the right to counsel. At the hearing, appellant entered a plea of guilty. Although this plea was later withdrawn, the Commonwealth at trial introduced appellant's uncounseled guilty plea in direct violation of *White v. Maryland,* 373 U.S.

59, 83 S. Ct. 1050 (1963).[1] Thus, the sole issue in this case is whether *White* is to be given retroactive effect. Both the hearing court and the Superior Court held that *White* applies only to trials commenced after the date of that Supreme Court decision. We reverse and grant appellant a new trial.

No responsible pronouncement on the retroactivity vel non of *White* can be made without first examining the case on which *White* relies so heavily, *Hamilton v. Alabama*, 368 U.S. 52, 82 S. Ct. 157 (1961). In holding that petitioner in *Hamilton* was entitled to counsel at his arraignment, the Supreme Court noted that an Alabama arraignment, per se, was always a "critical stage" requiring the assistance of counsel because, under Alabama law, certain defenses must be raised at the arraignment or be forever unavailable to the defendant. The crucial fact in *Hamilton* however was not that petitioner was without counsel at an arraignment, but rather that he was without counsel at an arraignment which was a *critical stage* in the criminal proceeding. Of course, the Court in *Hamilton* did not have to face the issue of whether an arraignment or preliminary hearing could amount to something less than a "critical stage."[2]

---

[1] In *White*, petitioner entered a guilty plea at his preliminary hearing without counsel being present. Following the hearing, White obtained counsel, withdrew his plea, and went to trial. Since the prior uncounseled guilty plea was introduced into evidence at this trial, the Supreme Court held that White's preliminary hearing constituted a critical stage in the proceeding requiring assistance of counsel. Accordingly, petitioner was granted a new trial at which the withdrawn guilty plea was not to be used against him.

[2] The terms "arraignment" and "preliminary hearing" are often used to refer to the same proceeding. For example, in Pennsylvania a preliminary hearing is that same proceeding which in Alabama is called an arraignment. It is a hearing before a magistrate, alderman, etc., at which time it is determined whether there

The Supreme Court came closer to facing this question in *White* itself. Unlike Alabama, there was no rule in Maryland that would make every preliminary hearing a critical stage. However, the Supreme Court did hold that the particular hearing in *White* was critical because, just as in the present case, an uncounseled defendant entered a plea of guilty at the preliminary hearing which was later withdrawn, yet still introduced into evidence at trial. In so deciding the Court said: "We therefore hold that Hamilton v. Alabama governs . . . ." 373 U.S. at 60, 83 S. Ct. at 1051.

Placing these two decisions side by side, the answer to the retroactivity of *White* clearly reveals itself. In *Stovall v. Denno,* 388 U.S. 293, 297, 87 S. Ct. 1967, 1970 (1967), the Supreme Court specifically listed *Hamilton v. Alabama* as one of those cases to be applied retroactively. Although the Commonwealth in the present case concedes, as it must, the retroactivity of *Hamilton,* it argues that this does not affect the retroactivity of *White,* because *Hamilton* involved only the peculiar Alabama arraignment procedure. We do not find this argument persuasive.

As we read *Hamilton,* the crucial fact is that the Supreme Court found the *particular* arraignment to be a *critical stage* in the proceedings. That *all* ar-

---

exists a prima facie case sufficient to hold defendant pending indictment by the grand jury. As *White* and the present case demonstrate, pleas of guilty are sometimes entered at this hearing. Of course, Pennsylvania does not *require* a plea to be entered at the preliminary hearing. Accordingly, unless such a plea is entered, or something else done at the hearing which later prejudices defendant, the preliminary hearing will not be considered a critical stage requiring the assistance of counsel. See, e.g., *Commonwealth ex rel. Parker v. Myers,* 414 Pa. 427, 200 A. 2d 770 (1964) ; *Commonwealth ex rel. Maisenhelder v. Rundle,* 414 Pa. 11, 198 A. 2d 565 (1964).

raignments in Alabama are critical stages per se has no bearing whatsoever on the result reached, except insofar as it made the Court's decision in Hamilton's case a bit easier. The real holding of *Hamilton* is that *any* arraignment or preliminary hearing which amounts to a critical stage requires the presence of counsel. *White* merely holds that the particular hearing in that case meets the critical stage test set forth in *Hamilton*. In fact, *White* specifically says that its holding is "governed" by *Hamilton*. It follows inexorably therefore that since *Hamilton* is retroactive, *White* must be.[3]

This result comports with the view, held by this Court as well as other tribunals, that the rule of *White* and *Hamilton* is forged from the same portion of the Sixth Amendment of the Constitution of the United States that mandated *Gideon v. Wainwright*, 372 U.S. 335, 83 S. Ct. 792 (1963) and *Douglas v. California*, 372 U.S. 353, 83 S. Ct. 814 (1963). The right of every individual to have the aid of counsel in making the difficult and complex journey down the path of criminal court procedure is one that has always been held retroactive. The retroactivity of both *Gideon* and *Douglas* rest upon the proposition that so fundamental is the right to counsel that its absence at any point after the judicial machinery has begun to operate upon the accused can have extremely deleterious effects upon the truth determining process itself. Whenever the accused enters a courtroom, be it presided over by magistrate or judge so long as what transpires in that

---

[3] Even if *White* itself were not retroactive, appellant would be entitled to relief under *Hamilton*. Since the present case and *White* are factually identical, and since the Supreme Court of the United States in *White* declared that it was governed by *Hamilton*, likewise the present case is also governed by *Hamilton*, an admittedly retroactive decision.

courtroom becomes a critical stage in the proceeding counsel must be at the defendant's side unless knowingly and intelligently waived.

This Court has frequently classified together the right to counsel at a preliminary hearing (where that hearing amounts to a critical stage) and the right to counsel at trial or on appeal. For example, in *Commonwealth ex rel. Wright v. Cavell*, 422 Pa. 253, 257, 220 A. 2d 611, 613 (1966), Mr. Chief Justice BELL, in discussing the rule of *Gideon*, stated: "This rule applies whenever a critical stage is reached, where rights may be preserved or lost." As support for this statement the opinion cites *White v. Maryland.* Similarly, in *Commonwealth ex rel. Fairman v. Cavell*, 423 Pa. 138, 222 A. 2d 722 (1966), we said: "The Sixth Amendment to the Constitution of the United States, which is applicable to criminal proceedings in state courts, requires that the accused be given the assistance of counsel at every critical stage of a criminal prosecution." Id. at 140, 222 A. 2d at 723-24. Again, authority for this proposition was the side-by-side citation of *Gideon* and *White.* See also *Commonwealth ex rel. O'Lock v. Rundle,* 415 Pa. 515, 520, 204 A. 2d 439, 441 (1964); *United States ex rel. Jones v. Fay,* 247 F. Supp. 26, 29 (S.D. N.Y. 1965), cert. denied, 385 U.S. 1012, 87 S. Ct. 721 (1967). Thus have the cases of *White* and *Gideon* travelled the same road through the field of judicial interpretation in Pennsylvania. It would, in our view, contravene both logic and the judicial process itself for them suddenly to take separate paths on the issue of retroactivity.

Finally, while not specifically holding until today that *White v. Maryland* is retroactive, we have impliedly reached that conclusion in numerous cases where the merits of a *White* claim were discussed even though the preliminary hearing took place well before

the *White* decision. See, e.g., *Commonwealth ex rel. Linde v. Maroney*, 416 Pa. 331, 206 A. 2d 288 (1965); *Commonwealth ex rel. Parker v. Myers*, 414 Pa. 427, 200 A. 2d 770 (1964); *Commonwealth ex rel. Chapman v. Maroney*, 414 Pa. 76, 198 A. 2d 548 (1964); *Commonwealth ex rel. Wagner v. Myers*, 414 Pa. 35, 198 A. 2d 540 (1964); *Commonwealth ex rel. Maisenhelder v. Rundle*, 414 Pa. 11, 198 A. 2d 565 (1964). In all of these cases, had it been the view of this Court that the mandate of *White* was not retroactive, we would certainly have declined the invitation to examine these preliminary hearings to determine if they were critical stages.

Lastly, the Commonwealth contends that even though *White* was not followed in appellant's case, this error was harmless. Not only are we unable to say, as we must whenever an error of constitutional proportions is alleged to be harmless, that the error of admitting appellant's guilty plea was harmless "beyond a reasonable doubt," *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824 (1967); *Commonwealth v. Pearson*, 427 Pa. 45, 233 A. 2d 552 (1967), but furthermore, we believe that any violation of *White v. Maryland* requires an automatic reversal without regard to whether the error could have been harmless.

In its landmark harmless error decision, *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824 (1967), the Supreme Court of the United States specifically pointed out that certain constitutional errors could never be harmless and would require automatic reversal. Id. at 24, n.8, 87 S. Ct. at 828, n.8. Among the errors cloaked with the mantle of automatic reversal was the denial of counsel in violation of *Gideon*. Since the right to counsel under *White* is but a corollary of *Gideon*, it would seem that a *White* violation also requires automatic reversal, and we so hold.

Furthermore, we noted in *Commonwealth v. Padgett*, 428 Pa. 229, 237 A. 2d 209 (1968), that the list of automatic reversal cases cited in *Chapman* at no point indicated that it was exhaustive. 428 Pa. at 233, n.8, 237 A. 2d at 211, n.8. For this reason, it became necessary for this Court in *Padgett* to undertake our own review to determine whether violation of *Escobedo v. Illinois*, 378 U.S. 478, 84 S. Ct. 1758 (1964), could be harmless. In making this review, one of the guidelines used to pass upon the harmless error-automatic reversal question was whether retroactive effect had been given to the right whose violation was claimed to be harmless. The reason for this test was the well-founded notion that those rights whose violation tends to have the greatest adverse effect on the reliability of the guilt determining process have traditionally been the rights given retroactive effect, for example the right to counsel or the right to have coerced confessions excluded from evidence. Similarly, it was felt by this Court that these same rights are so basic that their violation could not be considered harmless. Applying this barometer of retroactivity to the possible harmlessness of a *White* violation, since *White* is retroactive, so also do we hold its violation to be grounds for automatic reversal.[*]

Accordingly, appellant must be given a new trial on Bill No. 26 in order that he may have his guilt or innocence determined without the use of a prior uncounseled guilty plea.

The order of the Superior Court is reversed, the order of the Court of Common Pleas of Lycoming County is vacated, and the record is remanded to that

---

[*] The Supreme Court of the United States subsequently has resolved this issue consistent with the determination in this case. See *Arsenault v. Massachusetts*, 393 U.S. 5, 89 S. Ct. 35 (1968) (Per Curiam).

court for further proceedings consistent with this opinion.

Mr. Justice COHEN took no part in the consideration or decision of this case.

---

DISSENTING OPINION BY MR. CHIEF JUSTICE BELL:

I would hold that a magistrate's hearing is not and never has been a "critical stage" in Pennsylvania at which a person arrested for a crime cannot make a *voluntary* confession, unless represented by counsel.

The Majority does not and cannot say that this appellant—this dangerous criminal who was convicted in 1951 of aggravated assault and battery and robbery—was not guilty. This is still another case in the many recent decisions of this Court which the Majority believe are necessitated—not expressly but impliedly, or by a Procrustean stretch—by recent decisions of the Supreme Court of the United States. In the last few years, both Courts have invalidated guilty pleas, guilty verdicts, and voluntary confessions of *dangerous and undoubtedly guilty criminals* on some recently invented, unrealistic and farfetched interpretations of the United States Constitution which the minority of the United States Supreme Court correctly said found no "home" in and were not "supported" by the Constitution: *Harrison v. United States,* 36 U.S.L. Week 4549, 4551; *Escobedo v. Illinois,* 378 U.S. 478, 494, 499; *Miranda v. Arizona,* 384 U.S. 436, 525. See also, *Wesberry v. Sanders,* 376 U.S. 1, 42.

In *Escobedo v. Illinois,* 378 U.S., supra, Justice WHITE joined in by Justice CLARK and Justice STEWART, dissenting, said (page 499) that the majority Opinion excluded voluntary confessions "for . . . reasons, which can find *no home** in any of the provisions of the Constitution"; and on page 494 thereof, Justice

---

* Italics, ours.

STEWART said that the Majority was "supported by no stronger authority than its own rhetoric. . . ."

In *Miranda v. Arizona,* 384 U.S., supra, Justice HARLAN, joined in by Justice STEWART and Justice WHITE, dissenting, said (pp. 525-526): "Nothing in the letter or the spirit of the Constitution or in the precedents squares with the heavy-handed and one-sided action that is so precipitously taken by the Court in the name of fulfilling its constitutional responsibilities"; and Justice CLARK said (page 500): "The ipse dixit of the majority has no support in our cases."

In *Harrison v. United States,* 36 U.S.L. Week 4549, 4551, Justice WHITE, dissenting, said: "But here, as in Miranda v. Arizona, 384 U.S. 436 (1966), decision has emanated from the Court's fuzzy ideology about confessions, an ideology which is difficult to relate to any provision of the Constitution and which excludes from the trial [,] evidence of the highest relevance and probity."

See also, *Wesberry v. Sanders,* 376 U.S., supra, where Justice HARLAN, joined in by Justice STEWART, dissenting, said (page 42): "The Constitutional right which the Court creates is manufactured out of whole cloth."

Our law-abiding citizens need, as never before, equal Justice with, and adequate protection from, all murderers, rapists, robbers, violent rioters, and *all violators* of the law; and I am sorry to say that they are not getting it.

For these reasons, I would affirm the decision of the Court of Common Pleas and of the Superior Court.

Mr. Justice MUSMANNO joins in this dissenting Opinion.