Commonwealth *v.* Simon, Appellant.

Argued April 25, 1968. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

reargument refused December 30, 1968.

*Malcolm W. Berkowitz,* for appellant.

*James D. Crawford,* Assistant District Attorney, with him *Michael J. Rotko,* Assistant District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

ORDER PER CURIAM, November 27, 1968:
The Court being evenly divided, the judgment is affirmed.

Mr. Justice MUSMANNO did not participate in the decision of this case.

_____

OPINION BY MR. JUSTICE ROBERTS, IN SUPPORT OF THE ORDER:
This is an appeal from a 1962 conviction of first degree murder in which the jury fixed the penalty at life imprisonment. The appellant assigns several reasons why this Court should reverse the jury's determination and grant her a new trial.

The first two involve claimed errors in the court's charge to the jury. Initially appellant contends that the court incorrectly instructed the jury that a finding of intent to kill on the part of the defendant would preclude a verdict of voluntary manslaughter. It is, in fact, correct that twice the judge gave instructions which approximate this assertion. First: "Voluntary manslaughter consists in the unlawful killing of another without malice . . . and that means without direct intent to kill. . . ."; later: "If you bear in mind that manslaughter is never accompanied by legal malice, that is, by a direct intent to kill. . . ." However, the Commonwealth replies that if the charge is studied in

its entirety, the additional language cleared up any misconception. Specifically, the Commonwealth relies on this part of the charge: "The act of killing must, of course, be voluntary. That is what the very name of the crime implies, because voluntary manslaughter involves an intentional act."

While it is our conclusion that the charge read in its entirety does not require reversal of this conviction, as delivered, the instructions were not a model of clarity on this aspect of the case. The law is well settled in this state that a conviction for voluntary manslaughter may be entirely consistent with an intent to kill. First, in the situation where a defendant acts under an unreasonable fear that he is in danger of serious bodily harm, there may be a specific intent to kill, and yet the offense may constitute voluntary manslaughter. *Commonwealth v. Jordan,* 407 Pa. 575, 585, 181 A. 2d 310, 316 (1962); *Commonwealth v. Thompson,* 389 Pa. 382, 394, 133 A. 2d 207, 214 (1957). The same result occurs in the second instance where the defendant may have formed a specific intent to kill, which intent was the product of blind passion or rage. *Commonwealth v. Walters,* 431 Pa. 74, 82, 244 A. 2d 757, 762 (1968). Therefore, a trial court should make perfectly clear to the jury that, under given circumstances, the presence of an intent to kill should not preclude a verdict of voluntary manslaughter.

On the other hand, our review of this charge satisfies us that on this record the portions of the charge complained of were not of such a nature to justify the grant of a new trial. The situation which appellant claims was created by the trial court's charge could have been remedied by calling it to the attention of the court with an appropriate request for clarification. This was not done; nor was any point for charge submitted. The general exception lodged by trial counsel at the conclusion of the charge is never

a proper vehicle to preserve for consideration on appeal alleged errors in the charge, when a timely objection or request could have resulted in a correction of the trial court's unclear or inadequate instruction. See Pa. R. Crim. P. 1119.

The second alleged error is the court's failure to instruct the jury that if they found the defendant acted under an *unreasonable* belief that she was in danger of serious bodily harm, they should find her guilty of voluntary manslaughter. This instruction would have been a complement to the one actually given discussing the *reasonable* belief necessary to establish self defense and yield a not guilty verdict. The court, indeed, did fail to discuss this item in the portion of the charge dealing with the defense of self defense; but when the court charged on voluntary manslaughter, it included the unreasonable belief defense which appellant now contends was never presented. The court charged:

"[T]o reduce an intentional blow or wound which causes death to voluntary manslaughter, there must be either sufficient cause for provocation or a state of rage or passion without time to cool . . . . The word passion . . . includes such things as anger or terror. . . . Passion means any of the emotions of the mind, such as rage, sudden resentment, or terror, rendering the mind incapable of cool reflection."

Certainly this repetition by the court of these emotional states, especially terror, comprehends the situation where the defendant had an unreasonable fear. If the jury had believed that the appellant had an unreasonable fear, they could reasonably have been expected to find appellant guilty of voluntary manslaughter under this charge. In addition, if appellant's counsel believed that this explanation of voluntary manslaughter was not sufficiently explicit, we reiterate that the appropriate time to seek clarification

would have been when the jury was still in the court-room and the judge in a position to further amend his instructions. Counsel may not sit silently by at the conclusion of a charge which he thinks is incorrect. "[A] proper administration of justice requires that new trial be not granted on errors which counsel had ample opportunity to correct." *Segriff v. Johnston,* 402 Pa. 109, 113, 166 A. 2d 496, 499 (1960); see *Lobalzo v. Varoli,* 422 Pa. 5, 7, 220 A. 2d 634, 636 (1966) (concurring opinion).

This reasoning is entirely consistent with the new Rule of Criminal Procedure 1119 which provides: "(b) No portions of the charge nor omissions therefrom may be assigned as error, unless specific objections are made thereto before the jury retires to deliberate. . . ."* Al-though this rule was not in effect at the time of appellant's trial, it reflected the existing case law at the time of its adoption. *Commonwealth v. Rich-ardson,* 392 Pa. 528, 140 A. 2d 828 (1958); *Common-wealth v. Donough,* 377 Pa. 46, 103 A. 2d 694 (1954).

The dissenting opinion argues that these first two arguments by appellant should result in a reversal of the conviction. It states the general rule to be that this Court will not reverse on a ground not raised in the court below or on a point to which no excep-tion was taken by appellant, unless "there is basic and fundamental error which affects the merits or justice of the case." This standard is both incorrect and un-workable. First, the relevant standard must be *not* how severe was the error, *but* how easily can it be corrected. We are attempting to grant to each de-fendant as fair a trial as possible. This must be, of necessity something short of an error-free trial. There-

---

* See Pa. R. C. P. 227(b); Fed. R. C. P. 51. Both of these rules contain similar provisions limiting the effectiveness of the general exception and requiring specific objections to the charge to be filed prior to the presentation of the case to the jury.

fore we must insist that counsel object to all of those events which counsel alleges to be error so that the trial court is afforded an opportunity to remedy the alleged deficiencies which the trial court determines are valid. *Then,* this Court will reverse for (1) those errors which were so severe that any attempt to correct them could not dispel the earlier taint and (2) those objections which the trial Court overruled and which we find meritorious. Only in this way will the administration of criminal justice require reversals and retrials in those cases where it is absolutely essential. Further, the use of this inquiry will prevent counsel for defendant from passively allowing error to creep into the proceedings so that in case he fails to obtain an acquittal for his client, he will have established a sufficient record for the purpose of obtaining a retrial.

Second, the standard proposed by the dissent is simply unworkable. This can be demonstrated very easily. The dissent has applied their standard to three different situations before this Court involving "failure to object" problems; when examined, the total lack of parameters for employing their test becomes apparent. First, in the instant case, the "fundamental error" is an ambiguous charge; the dissent believes this error is sufficiently grievous to justify reversal even though there was no objection. Next is *Commonwealth v. Williams,* 432 Pa. 557, 248 A. 2d 301 (1968), another case involving an incorrect charge. In *Williams* the trial judge committed an error when he told the jury ". . . the burden is on the Commonwealth to establish his guilt in the commission of this crime. This is their burden. If you feel that their testimony does not substantially do that, based on the credibility of the witnesses, *then you are not required to bring in a conviction."* This remark was also held to be "basic and fundamental" error under

the test espoused by the dissent and therefore resulted in a reversal despite trial counsel's failure to object.

The third case is *Commonwealth v. Scoleri*, 432 Pa. 571, 248 A. 2d 295 (1968). In this case the appellant claimed that he was denied the rights guaranteed to him under *Commonwealth v. Vivian*, 426 Pa. 192, 231 A. 2d 301 (1967), in which this Court held that it was denial of defendant's right to the assistance of counsel to prohibit his speaking with his trial attorney during the noon recess while defendant was being cross-examined. Essentially the same thing occurred in *Scoleri*; the court instructed the defendant in the presence of the jury that he was not to talk to trial counsel during the recess. Thus there were two serious errors in *Scoleri*: (1) defendant's right to counsel was abridged and (2) the jury may have been prejudiced against the defendant by an ill-founded suspicion that because the defendant and trial counsel were not allowed to communicate, something was amiss. But the majority opinion in *Scoleri* decides that this error is not properly before the Court because it was not raised until appeal. In *Scoleri*, the majority states that the error was not "of such substance and prejudice as to result in an unfair trial and a deprivation of justice." This standard is of course nothing more than a reworking of the basic and fundamental error test in the *Simon* dissent and the *Williams* majority. Nor does it help us any more. In my view the dissent utterly fails to justify its position that the ambiguous or, perhaps, incorrect charges in *Simon* and *Williams* are any more *fundamental* or *basic* or of greater *substance* or *prejudice* than the denial of counsel and the prejudicial Court remark made to the jury in *Scoleri*. If anything, the *Scoleri* error was more shocking since it represented the denial of perhaps the most fundamental right. *Cf. Commonwealth ex rel.*

*Firmstone v. Myers,* 431 Pa. 628, 246 A. 2d 371 (1968), holding *White v. Maryland,* 373 U.S. 59, 83 S. Ct. 1050 (1963), to be fully retroactive, a decision supported by the Supreme Court of the United States shortly after *Firmstone. Arsenault v. Massachusetts,* 393 U.S. 5, 89 S. Ct. 35 (1968). *Firmstone* reasoned that the retroactivity of other right to counsel decisions such as *Gideon v. Wainwright,* 372 U.S. 335, 83 S. Ct. 792 (1963) and *Douglas v. California,* 372 U.S. 353, 83 S. Ct. 814 (1963) is based on the fact that "so fundamental is the right to counsel that its absence at any point after the judicial machinery has begun to operate upon the accused can have extremely deleterious effects upon the truth determining process itself." 431 Pa. at 633, 246 A. 2d at 374. Of course there is no reason why right to counsel should be any less fundamental here than in the retroactivity situation.

This Court, by purporting to apply the same rule on appeal, reaches obviously contradictory results. The majority uses the "basic and fundamental" rule to deny *Scoleri* relief despite the denial of his 6th amendment right to the assistance of counsel and grants or would grant relief to both *Williams* and *Simon* respectively for less than a constitutional claimed right which their counsels failed to call to the attention of the trial court. In the results which the exponents of the "basic and fundamental" rule reach, I fail to see the even-handed and equal administration of the criminal law.

The important consideration in all three cases is that, if the counsel for the defendants had made timely objection, there was at least a chance that the trial judge would have corrected the now complained of error. If the trial judge had, the trial would have been fair; if he had not, *then* it would have been time enough to have reviewed these issues on the merits.

Appellant's next assignment of error is that the prosecuting attorney's comments during the course of the trial were of such a prejudicial nature as to warrant a new trial. In Pennsylvania, the law is clear that a new trial is not warranted unless the alleged offending language's unavoidable effect would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant, so that they could not weigh the evidence and render a true verdict. *Commonwealth v. Capalla*, 322 Pa. 200, 185 Atl. 203 (1936); *Commonwealth v. McHugh*, 187 Pa. Superior Ct. 568, 145 A. 2d 896 (1958). However, whether this standard has been violated by the language of the district attorney is not in the first instance our decision to make. It is the duty of the trial judge to rule upon the comments; this Court is limited in its review to whether the trial court abused its discretion. *Commonwealth v. Martin*, 302 Pa. 118, 153 Atl. 141 (1930). A careful review of the record, including the context in which each of the remarks were made, reveals that while at times the district attorney's remarks may have been harsh and even unwarranted, they certainly were not of such a nature that they can be described as prejudicing the jury in favor of deductions not legitimately derived from the evidence. Therefore, we conclude that the trial court did not abuse its discretion in refusing to declare a mistrial.

During the trial, appellant was questioned about her carrying a knife. Her response was that the only time she carried a knife was on the day of the killing. To contradict her, the prosecution called Phyllis Johnson who testified that appellant had drawn a knife on her one month earlier. Appellant urges that the admission of this testimony was reversible error. We do not agree.

There is no doubt that testimony concerning certain acts by the defendant which tends to show the commission of another and unrelated crime is inad-

missible evidence. *Commonwealth v. Burdell*, 380 Pa. 43, 110 A. 2d 193 (1955). But since this testimony was offered to contradict an important phase of appellant's testimony, the fact that it also represents a description of acts which might be a crime should not of itself render it impermissible. Appellant also complains that the trial judge said: "This is testimony to show the vicious disposition of the defendant. . . ." But this remark was made by the judge in chambers; for this reason nothing prejudicial resulted from it. The underlying rationale for the rule which appellant claims is controlling includes situations where the evidence of an earlier crime or "vicious disposition" is introduced *without any independent justification*. Such is not the case here.

Appellant's final argument involves the cross-examination of one of her character witnesses, Josephine Bond. This character witness was asked: "You are aware, aren't you, that our Juvenile Court noted that you are an irresponsible person, having a questionable home and a poor reputation in the neighborhood?" This statement was denied and in rebuttal the prosecution called Frances Shochet, a probation officer of the county court who testified concerning a custody proceeding involving the witness and her poor reputation. It is true that it would have been improper to offer this testimony to impeach the credibility of the witness; the custody dispute could not possibly amount to a conviction of a felony or misdemeanor involving crimen falsi. *Commonwealth v. Jones*, 334 Pa. 321, 5 A. 2d 804 (1939). However, it has long been the law in this Commonwealth that it is proper to examine a character witness to prove that his "standard of what constitutes good repute is unsound." *Commonwealth v. Becker*, 326 Pa. 105, 115, 191 Atl. 351, 356 (1937). "The admission of testimony of good reputation is of doubtful value and often deceptive

where there is not applied to it the acid test of cross-examination to prove . . . the standard by which the witness measures reputation." Id. Since this was the purpose for the prosecution's line of questioning, the appellant's complaint certainly does not constitute reversible error.

I find no basis for disturbing the judgment below. Judgment affirmed.

DISSENTING OPINION BY MR. JUSTICE O'BRIEN:

Justice ROBERTS in his "opinion in support of the order of the court" would permit a charge on voluntary manslaughter in this case which is highly prejudicial to appellant. Twice the court instructed the jury that a verdict of voluntary manslaughter is not proper when there is a direct intent to kill. First: "Voluntary manslaughter consists in the unlawful killing of another without malice . . . and that means without direct intent to kill. . . ."; later: "If you bear in mind that manslaughter is never accompanied by legal malice, that is, by a direct intent to kill. . .". Justice ROBERTS himself clearly points out that these instructions were erroneous. However, he refuses to reverse for this error, although from his opinion it is not exactly clear on which of two grounds he bases his result. Either he is of the view that the error was cured by other portions of the charge, or he believes that appellant's failure to take a specific exception to the portions complained of precludes our review, or both. I can agree with neither conclusion.

The court also charged, "The act of killing must, of course, be voluntary. That is what the very name of the crime implies, because voluntary manslaughter involves an intentional act." This hardly cures the faulty language to the effect that a finding of intent to kill precludes a verdict of voluntary manslaughter.

Informing the jury that voluntary manslaughter by its nature requires an intentional act, by no means informs them that voluntary manslaughter is consistent with an intent to kill. The act itself can well be intentional without any intent to kill being present. In view of the fact that the evidence in this case only barely supports the verdict of first degree murder, I conclude that the erroneous instructions were definitely prejudicial to appellant.

Nor are we precluded from reversing on this ground merely because no special exception was taken. Regardless of what effect Pa. R. Crim. P. 1119(b), effective August 1, 1968, may have on future appeals,[1] it clearly is inapplicable to the present case. To state, as Justice ROBERTS does, that the Rule reflects the existing case law at the time of its adoption, is simply to ignore the consistent view of this Court. That view was very recently summarized in *Commonwealth v. Williams*, 432 Pa. 557, 248 A. 2d 301 (1968), where the Court, speaking through Chief Justice BELL, stated: "The Commonwealth contends that appellant's failure to take an exception to the charge prevents our consideration of any errors therein. Because of fairness to all the parties to the litigation and the speedy administration of trials and of Court business, it is a well established *general* rule that an appellate Court will not reverse (1) on a point (a) where no exception was taken by appellant or (b) to which only a general exception was taken, or (2) on a ground not raised in or by the Court below.

"*However, this general rule will not be applied* where there is basic and fundamental error which affects the merits or justice of the case, or, as some cases express it, offends against the fundamentals of

---

[1] Since it is not now before us, I express no opinion as to the effect of that Rule.

a fair and impartial trial or deprives a defendant of '. . . "that fundamental fairness essential to the very concept of justice," and, hence, denies him due process of law guaranteed by the Fourteenth Amendment'." [Citations omitted throughout quote]. (Emphasis in original). None of the cases cited by Justice ROBERTS is inconsistent with this view that where there is *fundamental* error in the charge, this Court will not permit the verdict to stand. Surely where fundamental error in a charge results in a verdict of first degree murder and a sentence of life imprisonment, it glorifies procedure beyond all bounds of reason to affirm such a verdict.

I dissent.

Mr. Justice COHEN joins in this dissent.