509 A.2d 351

**COMMONWEALTH of Pennsylvania**

**v.**

**Thelma STANTZ, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 17, 1985.

Filed May 7, 1986.

David J. Kaltenbaugh, Assistant Public Defender, Johnstown, for appellant.

Dennis M. McGlynn, Assistant District Attorney, Johnstown, for Commonwealth, appellee.

Before BECK, JOHNSON and MONTGOMERY, JJ.

JOHNSON, Judge:

Appellant, Thelma Stantz, takes this appeal from the judgment of sentence of life imprisonment, entered February 22, 1985, for the first degree murder of Sara "Tootie" Bartlebaugh. Appellant was found guilty by Judge Joseph F. O'Kicki, sitting without a jury, of causing the death of the fifteen year-old victim, a part-time babysitter and paramour of appellant's husband, by inflicting multiple blows to the skull with a two-by-four.

Appellant raises the following issues for our review:

1.) APPELLANT WAS DENIED A FAIR TRIAL AND ADEQUATE REPRESENTATION BY THE TRIAL COURT'S REFUSAL, WITHOUT A HEARING, OF HER MOTION REQUESTING ACCESS TO MATERIAL WITNESSES.

2.) THE TRIAL COURT ERRED BY PERMITTING THE DISTRICT ATTORNEY TO RENEGE ON A BARGAIN ENTERED INTO PRIOR TO TRIAL IN WHICH APPELLANT AGREED TO A NON–JURY TRIAL IF THE DISTRICT ATTORNEY WOULD SEEK A VERDICT OF GUILT NO HIGHER THAN THIRD DEGREE MURDER, AND BY PERMITTING PREJUDICIAL REMARKS BY THE DISTRICT ATTORNEY ON SUMMATION.

3.) THE TRIAL COURT ABUSED ITS DISCRETION BY PERMITTING, OVER OBJECTIONS, DURING THE DISTRICT ATTORNEY'S CROSS–EXAMINATION OF APPELLANT:

(a) A QUESTION WITHOUT PROPER FOUNDATION;

(b) A QUESTION AS TO WHY APPELLANT'S COUNSEL DID NOT BRING FORTH EVIDENCE ON DIRECT EXAMINATION;

(c) A QUESTION THAT HAD BEEN ASKED AND ANSWERED.

4.) EVIDENCE OF APPELLANT'S INTOXICATION WAS SUFFICIENT UNDER 18 Pa.C.S. § 308 TO REDUCE GUILT TO THIRD DEGREE MURDER BECAUSE APPELLANT WAS INCAPABLE OF FORMING THE SPECIFIC INTENT FOR FIRST DEGREE MURDER.

5.) THE FAILURE BY THE DISTRICT ATTORNEY TO REBUT APPELLANT'S TESTIMONY OF HER HUSBAND'S GUILT VITIATES THE VERDICT.

Finding appellant's claims to be lacking in merit, we affirm.

The events which resulted in the death of the victim occurred during the weekend of September· 9, 1983. The record indicates that on that date, appellant picked Tootie Bartlebaugh up at her home after school for weekend babysitting. On Saturday, September 10, appellant, her three children, and the victim made at least one trip to a local garbage dump to collect aluminum cans. According to appellant's statement of October 1, 1984, appellant's daughter discovered a letter while en route to the dump, written by Tootie to appellant's husband. Appellant, who had been aware of the victim's relationship with her husband for some time, became enraged. According to appellant's statement, while she and the victim were looking for cans, Tootie commented that the dump may have been the place where she had become pregnant by appellant's husband. Appellant knew of the pregnancy and subsequent miscarriage, but at this point she "picked up a board and I swung the

board and hit her, ... I think I hit her twice, I'm not sure. Tootie was laying on the ground, she was crying. I left her there, and I went to the car and told the kids we would drive around for awhile and come back and pick her up, but I never went back ..."

■ Appellant first argues that the trial court erred by denying her Motion to Allow Visitation with her three children. Appellant contends that her due process rights were violated because her motion was refused without a hearing, and that she was denied access to material prosecution witnesses.

It is. well settled that the grant or denial of a motion to secure witnesses is a matter within the sound discretion of the trial court. *Commonwealth v. Sullivan,* 484 Pa. 130, 398 A.2d 978 (1979), *Commonwealth v. Stanton,* 294 Pa.Super. 516, 525–26 n. 10, 440 A.2d 585, 590 n. 10 (1982). Appellant's Motion to Allow Visitation states simply that appellant's three children are in the custody of Cambria County Children and Youth Services, that appellant wishes to visit with them prior to Christmas, and that appellant's attorneys wish to interview the children who saw appellant and the victim prior to the crime.

While an accused's right "to have compulsory process for obtaining witnesses in his favor" is guaranteed by Article I, Section 9 of the Pennsylvania Constitution, "implicit in such a right is the requirement that the defendant establish that the person to be produced has relevant or material testimony on the issues in question." *Commonwealth v. Coffey,* 230 Pa.Super. 49, 51, 331 A.2d 829, 831 (1974). Under both our state and federal constitutions, the "right to compulsory process does not grant to a defendant 'the right to secure the attendance and testimony of any and all witnesses: it guarantees him "compulsory process for obtaining *witnesses in his favor."'* *United States v. Valenzuela-Bernal,* [458 U.S. 858, 867, 102 S.Ct. 3440, 3446, 73 L.Ed.2d 1193, 1202 (1982)] (emphasis in original), quoting U.S. Const. amend. VI." *Commonwealth v. Lahoud,* 339 Pa.Super. 59, 65, 488 A.2d 307, 310 (1985).

In *Commonwealth v. Lahoud, id.*, the desired witness was absent. A panel of this Court found, however, that appellant's rights were not violated for failure to secure a witness where the record failed to demonstrate that the witness was material to the defense or had information favorable to appellant. *Id.*, 339 Pa.Superior Ct. at 66, 488 A.2d at 311. The Court went on to find that "[i]mplicit in the requirement of materiality is a concern that the absent witness have information which might have affected the outcome of the trial.... Appellant was not relieved of the burden of showing that the missing witness would have given favorable testimony merely because the defense did not have prior access to the witness." *Id.*, 339 Pa.Superior Ct. at 67, 488 A.2d at 311. An even stronger case exists herein, where appellant's daughter Tammy testified at trial and hence was not a missing witness.

Based upon the limited information set forth in appellant's motion, we find that the trial court did not abuse its discretion in refusing a hearing on appellant's motion, and by ultimately denying the request by order dated December 21, 1984. Moreover, appellant's attorneys were provided with copies of the children's statements, and had the opportunity to cross-examine appellant's oldest daughter, Tammy, who witnessed the incident. Appellant's argument that the inability to interview Tammy before trial restricted cross-examination to the subjects set forth in her statement is specious: cross-examination of an adverse witness is limited to matters brought out on direct examination. *Commonwealth v. Lore*, 338 Pa.Super. 42, 57, 487 A.2d 841, 849 (1984). The latitude of the scope of cross-examination is a matter vested within the sound discretion of the trial court. *Id.* "An abuse of discretion will not be found if the defendant's right to full and effective cross-examination is not abridged, even if the defense is not permitted to cross-examine in the manner it desires." *Commonwealth v. Rhem*, 283 Pa.Super. 565, 575, 424 A.2d 1345, 1350 (1980).

Appellant has not indicated what she sought to bring forth on cross-examination and we cannot determine wheth-

er the trial court could have, or should have, permitted a wider latitude of cross-examination. Providing the defense with a copy of the witness' statement offered an adequate opportunity to prepare an effective cross-examination, and appellant failed to set forth any compelling reasons before the trial court, or before this Court, to convince us that interviewing her children was a necessity.

■ Appellant's second argument is that she entered into an agreement with the prosecutor to waive a jury trial in return for a stipulation that the Commonwealth would seek a verdict no higher than murder in the third degree. Appellant contends that the trial court erred by permitting the prosecutor to renege on this agreement, and by allowing prejudicial remarks by the assistant district attorney during his summation. The record, however, simply does not support the allegation that an agreement was entered, and the prosecutor's comments do not rise to a level which would require that a new trial be granted.

During the pre-trial hearing on appellant's discovery motions, the following exchange occurred:

THE COURT: The Court after having talked with Thelma Stantz believes that she knowingly and intelligently has waived her right to a jury trial. We will accept her waiver and we will then set the matter for trial on February 20, 1985 at 10:00 a.m. and February 21, 1985; and, of course, if necessary, February 22.

At that time, all parties may be present and shall present their respective witnesses.

MR. LOVETTE [DEFENSE COUNSEL]: Judge, so that the record is clear, I guess we could call this a stipulation; but what we have stipulated to is that the Commonwealth intends to present evidence which will show, they hope, in their favor that the degree of guilt should be third degree in this matter.

The defense on behalf of Mrs. Stantz, intends to show or present evidence which will hopefully show a degree of guilt of voluntary manslaughter. So that it is clear on the record, that is the avenue of the evidence that we are

going to present and the avenue of the evidence that the Commonwealth is going to present.

THE COURT: Suppose it rises higher than third degree? Are you saying the Court is bound to make a finding of third degree murder and not first degree?

MR. LOVETTE: We are not saying that, and we have not stipulated to that; but we believe, on the defense side, that it could rise no higher than third. However, the Commonwealth, I think, believes on their side that it is third. However, if it does rise higher, it rises higher.

Similarly, during a hearing in which a video tape of the scene was viewed and bond was discussed, the court again indicated that it was not bound to any degree of guilt:

MR. LOVETTE: ... Judge, if you will recall, the Commonwealth has indicated that they are going to attempt to prove third degree murder and the defense has indicated that they are going to attempt to show it rises no higher than voluntary manslaughter. In fact, those are the proposals by the Commonwealth and the defense.

We think that the bond ought to be set appropriately and not as a bond for a first degree murder charge. There is no bond set now. We would recommend, I think, somewhere in the neighborhood of $20,000.00 certainly ought to assure her appearance.

THE COURT: Well, the Court, of course, is not bound by both perimeters of what either counsel tends to prove or what the District Attorney or what the defense counsel thinks the District Attorney may prove.

And finally, in denying appellant's motion for bail, the court stated:

Her trial, which is essentially a degree of guilt hearing, is set within 30 days. Some counsel in the case indicate that the level of culpability is murder in the third degree; other counsel view the facts as rising only to the voluntary manslaughter level.

In addition, in consideration of the fact that this Court is not bound to any proposed degree of guilt and thus the crime of homicide may rise to the highest degree, it is

hereby ordered and decreed that Defendant's Motion to Set Bail is denied.

Our review of the record convinces us that no agreement was entered whereby the Commonwealth stipulated to seek a verdict no higher than third degree murder; nor did the trial court accept any such proposition. The portion of the record cited by appellant, N.T., 2/20/85 at 7, does not support her position: defense attorney Kaltenbaugh himself states, immediately preceding, "I think it is clear from the record that the Court can find any degree of guilt it wishes." N.T., 2/20/85 at 6. The trial court could not err by permitting the prosecution to renege on a non-existent agreement.

Similarly, the challenged statements of the assistant district attorney during closing argument do not warrant the granting of a new trial. The comments, "That is such a morbid, sick thing to do" and "Next lie, . . ." must be viewed in light of the principle that not every intemperate or uncalled for remark requires a new trial. *Commonwealth v. Jarvis*, 482 Pa. 598, 394 A.2d 483 (1978); *Commonwealth v. Youngkin*, 285 Pa.Super. 417, 427 A.2d 1356 (1981). Reversible error exists only where the cumulative effect of any improper remarks so prejudices the jury as to prevent a fair trial. *Commonwealth v. Simon*, 432 Pa. 386, 248 A.2d 289 (1968); *Commonwealth v. Youngkin*, *supra*. These safeguards have been established to prevent the jury from "forming in their minds fixed bias and hostility toward the defendant, so that they could not weigh the evidence and render a true verdict." *Commonwealth v. Simon*, *supra*, 432 Pa. at 394, 248 A.2d at 292. These concerns are lessened, if not eliminated, where, as here, the trial judge sat as finder of fact.

Third, appellant challenges three matters raised while she was cross-examined by the assistant district attorney. We note at the outset that the trial court's rulings on the parameters of cross-examination may not be reversed absent a clear abuse of discretion or error of law. *Commonwealth v. Greene*, 469 Pa. 399, 366 A.2d 234 (1976).

The prosecutor asked appellant, "Didn't you also decide that you would do something so that Ben [appellant's husband] wouldn't bother her [the victim]?" Appellant's attorney objected, stating, "That question is totally out of the blue." Appellant now argues that the question had no basis in the direct examination, and no foundation was laid in prior cross-examination.

The trial court overruled the objection because the witness "is a party and a very wide range of permissible questions is permitted." Indeed, "the right of cross-examination extends beyond the subjects testified to in direct testimony and includes the right to examine on any facts tending to refute inferences or deductions arising from matters testified to on direct." *Commonwealth v. Lopinson*, 427 Pa. 284, 300, 234 A.2d 522, 562 (1967) (vacated on other grounds). Moreover, immediately preceding the challenged question, appellant stated that she had discussed with the victim's mother the fact that Tootie no longer wanted to see Ben, and the mother had responded that "she would make sure that Ben didn't bother her." Not only did the prosecutor's follow-up question adequately arise from matters raised on direct examination, but appellant's previous answer laid the foundation on cross-examination as well.

Appellant testified further during cross-examination that she discussed the incidents with her husband Ben, he went out to the dump to get Tootie, and when he returned home, "He said he killed her." The assistant district attorney then asked, "Now, Thelma, why is it that you didn't testify to that earlier?" She responded that she was not asked about that earlier. The prosecutor then asked, "Why didn't you testify to that when your own lawyer was asking you?" Appellant's counsel objected, and now argues that this question intruded upon the attorney-client privilege. We cannot agree. After the trial court overruled the objection, appellant responded that she had not said anything before, "Because my attorney did not get into that matter whereas you did." We do not see how this exchange

infringed upon the attorney-client privilege, nor do we find any apparent injury resulting from the trial court's ruling in permitting the question. *See Commonwealth v. Dombrauskas*, 274 Pa.Super. 452, 418 A.2d 493 (1980); *Commonwealth v. Donnelly*, 233 Pa.Super. 396, 336 A.2d 632 (1975).

■ A series of questions were also asked regarding the activities of appellant's husband. It is contended that these questions were repetitive, and the trial court erred by allowing, over objections, a question that had been asked and answered. As stated previously, "the scope of cross-examination is largely within the sound discretion of the trial judge, and even if a ruling is erroneous, the error is not grounds for reversal unless it results in apparent injury." *Commonwealth v. Dombrauskas, supra*, 274 Pa.Super. at 463, 418 A.2d at 499. The trial court did not err by permitting the assistant district attorney to pursue this line of questioning, and appellant has not demonstrated any injury from these, or any other, challenged questions.

■ Appellant's fourth contention is that sufficient evidence was advanced of her intoxication at the time of the criminal incident such that she was rendered incapable of forming the specific intent necessary to be found guilty of first degree murder. As provided by 18 Pa.C.S. § 308, evidence of intoxication may be offered when it is relevant to reduce murder from a higher to a lower degree. Appellant argues, therefore, that her intoxication mandated a verdict of no higher than third degree murder.

Our supreme court stated, in *Commonwealth v. Fairell*, 476 Pa. 128, 133–34, 381 A.2d 1258, 1260 (1977), "Evidence of intoxication, if believed, may operate to negate the intent necessary for conviction of murder in the first degree. [18 Pa.C.S. § 308] Such evidence is submitted for the consideration of the factfinder." In the case at bar, it was for the trial court, sitting as finder of fact, to determine whether the evidence submitted by appellant was convincing. The trial court stated in its Opinion:

The Court must balance the defendant's statements regarding excessive drinking against her conduct of September 9 and September 10. She possessed selective, but vivid recollection of the number of drinks, kind of drinks, size of drinks, and the period of time that she did do the drinking. She had selective recollection of the details of conversations that she had with the victim, Tootie Bartlebaugh, at breakfast, at lunch, at the roadway stop along Route 22, and at the dump site where the attack took place. Her selective recollection is very vivid and negates the affect of alcoholism.

It is noteworthy to the Court, that while she engaged in said drinking activity, she had driven her car through the City of Johnstown, into Richland Township, back to the City of Johnstown, into the Vintondale area and back several times. Such driving without incident, again is a factor that negates the affect of alcoholism.

For an employer to ask her to work, implies to the Court that her alcoholic condition was such that it was minimal and that she was able to perform her duties without problem or incident to the patrons at the Jockey Club.

It is evident to the Court that she engaged in the plan of deception immediately after the incident. Her conduct in going to the Bartlebaugh home and informing them that Tootie had run away is the product of a diabolical mind and not the product of an alcoholic mind.

On subsequent occasions, she expressed stories of having seen the victim at Sheetz stores in Johnstown, and in the Central Park area in Johnstown.

It further is the belief of this Court, that if she had consumed all the alcohol that she maintains she did, she would not be able to stand up let alone walk or drive a car. We do not believe she had engaged in the excessive drinking the night before the incident or on the day of the incident.

We will not disturb Judge O'Kicki's sound and well-reasoned finding of fact on this point.

■ Finally, as to appellant's fifth issue regarding the Commonwealth's failure to rebut appellant's testimony of her husband's guilt, it is conceded in appellant's brief that *Commonwealth v. Coleman*, 455 Pa. 508, 318 A.2d 716 (1974) controls, wherein it was held that the finder of fact has the right to reject part, or all of defendant's testimony, even if uncontradicted. As such, the absence of rebuttal testimony did not vitiate the guilty verdict of murder in the first degree.

Judgment of sentence affirmed.