## John DILLOW, Appellee

v.

## Anne MYERS, Personal Representative of The Estate of Edward John Myers, Deceased, and Funk Water Quality Company, Appellants.

Superior Court of Pennsylvania.

Argued July 26, 2006.
Filed Jan. 16, 2007.
Reargument Denied March 2, 2007.

---

1. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

Glenn A. Ricketti, Philadelphia, for appellants.

Steven J. Margolis. Bethlehem, for appellee.

BEFORE: MUSMANNO, KLEIN and TAMILIA, JJ.

OPINION BY KLEIN, J.:

¶ 1 John Dillow recovered both compensatory ($271,000) and punitive damages ($155,000 against Funk and $100 against Myers)[1] after liability was admitted in a negligence law suit filed as a result of a vehicle accident. Dillow, who was in a parked truck on the shoulder of a road, was struck by a truck owned by Defendant Funk Water Quality Company and operated by Defendant's employee, Edward John Myers.[2] Myers was sued[3] as a result of his direct negligent conduct and Funk under a theory of vicarious liability as Myers' employer.[4] We affirm.

1. This verdict was later amended to include delay damages. Additionally, compensatory damages were reduced by $10,000, representing the amount Plaintiff recovered in first-party wage loss benefits from his automobile insurance company.

2. Edward John Myers died of unrelated causes prior to trial.

3. Plaintiffs filed a first and second amended complaint. However, the trial court granted Defendant's preliminary objections with regard to not permitting the claim of Funk's negligent supervision of Myers to proceed. Moreover, the court permitted Plaintiff to seek punitive damages against Myers.

4. In Pennsylvania, an employer is responsible for tortious misconduct by an employee that causes harm to a third party, so long as the employee's misconduct occurred in the course of and within the scope of his employment. *Costa v. Roxborough Mem'l Hosp.*, 708

¶ 2 Essentially, the accident was caused because the loading racks on the driver's side of the truck were either missing or broken, requiring the heavy cargo (steel water cylinders) to be placed exclusively on racks on the passenger side of the truck. In fact, the truck was listing so badly that Myers had his side mirror view blocked by the body of the truck. Myers told an investigator that the truck was so overloaded that he had to pull the wheel to the left just to stay straight in the right lane. Nonetheless, witnesses testified that Myers still would accelerate going down hills so he would be in excess of the speed limit, traveling at approximately 65–70 miles per hour. Myers would often change lanes without signaling and ultimately swerved onto the shoulder of the road, hitting the truck that Dillow was occupying. There was no evidence that he ever applied the truck's brakes.

¶ 3 On appeal Defendants claim that: (a) a mistrial should have been granted because Plaintiff's attorney made prejudicial remarks in his closing argument; (b) there was no evidence of outrageous conduct on the part of Defendants to justify punitive damages; (c) since punitive damages were only listed at $100 against the estate of Myers, the deceased driver, that the larger punitive damages could not lie against Defendant Funk; and (d) the verdict and delay damages should be reduced because *Defendants* paid the Workers' Compensation Carrier for any potential lien.

¶ 4 We disagree and, therefore, affirm.

*Closing Argument Remarks*

 ¶ 5 The comments made by counsel in his closing were not prejudicial such

that a mistrial should have been granted. First, in closing, counsel attempted to qualify the reckless conduct exhibited by Myers when he stated:

> Oh, my God, could you imagine—obviously this isn't the case here but could you imagine a drunk driver getting into an accident and saying you know what, this wasn't reckless conduct because I drive drunk all the time and I never had an accident before. Would you look at that drunk driver and say that, oh, yeah, you know what, if he did it before, it's not a problem today. You wouldn't.

N.T. 11/10/2004 at 77.

 We find that counsel merely used the drunk driver reference as an analogy in explaining why it was non-sensical to claim that Myers' conduct was not outrageous simply because he had driven the same improperly loaded truck in the past without incident. While counsel may have been able to use a more suitable example to get his point across, the jury was not misled or confused into believing that counsel was claiming Myers was actually drunk when he drove the truck and caused the accident with Dillow. Absolutely no reference to alcohol consumption or driving while drunk was mentioned in the entirety of the trial. It is well settled that not every intemperate remark by an attorney requires a mistrial. *Commonwealth v. Stantz*, 353 Pa.Super. 95, 509 A.2d 351 (1986).

 ¶ 6 Moreover, while counsel did mischaracterize that Funk permitted more than one of its trucks to operate on the roadways in sub-par condition (i.e., with

A.2d 490, 493 (Pa.Super.1998). "The conduct of an employee is considered 'within the scope of employment' for purposes of vicarious liability if: (1) it is of a kind and nature that the employee is employed to perform; (2) it occurs substantially within the authorized time and space limits; (3) it is actuated, at least in part, by a purpose to serve the employer; and (4) if force is intentionally used by the employee against another, the use of force is not unexpected by the employer." *Id.*

broken racks for the loads),[5] the trial court quickly cleared up any confusion. Specifically, the court told the jury, "I'm directing you that there is no testimony that I've heard in the record that there was any other truck of Funk Water Quality Company that could be considered to be in similar condition [as] this truck; that it was in any manner unsafe. It is improper to make that kind of argument to you and so I'm directing you to discount—to not take into consideration at all any reference to other trucks and what condition they might be in." N.T. Trial 11/10/2004 at 88. Additionally, Plaintiff's counsel then followed the court's warning with a clarification of his earlier statement, indicating that despite the fact that Funk has 23 trucks, they chose to send out *this* (Myers') truck repeatedly with broken racks and misloaded. *Id.*

¶ 7 Because the comments made by counsel were properly tempered by the court's instructions and counsel's clarification, and did not mislead or confuse the jury, they did not deprive Defendants of a fair trial. Thus, this claim is meritless. See *Commonwealth v. Baskerville,* 452 Pa.Super. 82, 681 A.2d 195 (1996).

*Defendants' Outrageous Conduct*

■ ¶ 8 Allowing a truck to go out on the road where the load could not properly be distributed because of a broken loading rack; not braking when traveling down hills so that the truck exceeded the speed limit; driving with limited visibility because the listing of the back of the truck obscured the view from the side mirror; and changing lanes under these circumstances without signaling is sufficient evidence to justify a jury's conclusion that the Defendants' conduct was outrageous. *SHV Coal, Inc. v. Continental Grain Co.,* 526 Pa. 489, 587 A.2d 702 (1991) (determination of whether a person's actions arise to outrageous conduct lies within sound discretion of fact-finder and will not be disturbed on appeal unless discretion has been abused).

*Punitive Damages and Verdict Slip*

■ ¶ 9 A claim for punitive damages arises out of the underlying cause of action. *Costa v. Roxborough Mem. Hosp.,* 708 A.2d 490 (Pa.Super.1998). It is well settled that there is no set formula for setting punitives. *Voltz v. General Motors Acceptance Corp.,* 332 Pa. 141, 2 A.2d 697 (1938). Defendants object to the fact that the trial court had separate verdict slips for each of them with regard to assessing punitive damages and for the fact that Funk had to pay a much higher punitive damage award than its employee who caused the plaintiff's injuries.

■ ¶ 10 We find no abuse of discretion on the part of the jury where Myers' conduct was outrageous considering the way he loaded and drove the truck and as to Funk where Myers was working as its employee at time of the accident. *See Dean Witter Reynolds, Inc. v. Genteel,* 346 Pa.Super. 336, 499 A.2d 637 (1985) (where employee caused injury to third party victim, punitive damages could be properly awarded against employer for employee's reckless indifference). Moreover, it was completely proper for the jury to assess

---

5. Counsel stated:
 And I submit to you the law says you have to hold them liable because this is pretty outrageous conduct for a company to be put—that has 23 trucks on the road—you heard the testimony from Mr. Buler—23 trucks that they're sending all over the place and they regularly send out trucks in a condition that's going to cause this kind of injury to people on the road.
 N.T. Trial 11/10/2004 at 79.

punitives at a higher amount for Funk, Myers' employer, based upon its financial status. There is no rule that an employer's punitive damages must be limited or proportionate to those caused by its employee when fault is premised upon the theory of vicarious liability. *See SHV Coal, supra* (in assessing punitive damages, trier of fact can properly consider character of the defendant's act, nature and extent of harm to plaintiff that defendant caused or intended to cause and *wealth of the defendant); see also Hannigan v. Klein's Department Store*, 1 Pa. D. & C.3d 339 (1976), *aff'd per curiam*, 244 Pa.Super. 597, 371 A.2d 872 (1976) (where department store's employee's behavior justified punitive damage award, jury properly considered defendant-store's financial status where it was common knowledge that it was a large corporation with many retail department stores in Northeast; substantial punitive damages against employer-store were warranted to fulfill purpose as punishment and deterrent).

*Workers' Compensation Lien*

¶ 11 Finally, Defendants argue that Plaintiff's recovery and delay damages should be reduced because they paid any potential lien to the Workers' Compensation Carrier. A workers' compensation lien is between the worker and his carrier. Normally, the percentage of counsel fees and costs are deducted from the amount due on the lien. A defendant in a civil case cannot essentially deprive plaintiff's counsel of his fee for his services by prepaying the lien. In fact, had the money been accepted by the carrier, it is possible that this would have been a windfall to plaintiff because of Defendants' improper unilateral action. However, in this case, there is no evidence of record that

the carrier accepted Funk's tender, so this argument fails for that reason as well.

¶ 12 Judgment affirmed.