J-A04043-19

2019 PA Super 134

| | | |
|---|---|---|
| MANAJA LIVINGSTON, DARREN SHIN, ROSAURA SANCHEZ, HECTOR AMADO SANCHEZ, ROSA MARIA TAPIA, SEMEN BABADZHANOV AND TATIANA LIAKH | : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : : | No. 318 EDA 2017 |
| GREYHOUND LINES INC., SABRINA ANDERSON, FIRSTGROUP AMERICA, C.A.V. ENTERPRISES, LLC, AKOS GUBICA AND KAROLLY GUBICA | : : : : : : | |
| APPEAL OF: GREYHOUND LINES, INC. AND SABRINA ANDERSON | : : | |

Appeal from the Judgment Entered December 28, 2016
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  No. 2946 April Term, 2014

| | | |
|---|---|---|
| FAITHLEE BROWN AND JOSEPH HOANG AND KENNETH ROTHWEILER, ESQ., CO-ADMINISTRATORS OF THE ESTATE OF SON THI THANH HOANG, DECEASED AND HIREN PATEL, GUSTAV FREDERIKSEN, BRANDON OSBORN, ELORA LENCOSKI, BARBARA YERGER-DOYLE, WILLIAM KOOMSON, FNU SALFULAH, KEITH PRESSMAN, CHARLES REID, MICHAEL KATCHPAW, SURAJ BALAKRISHNAN AND AHMED ALJAHMI | : : : : : : : : : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : : | No. 570 EDA 2017 |
| GREYHOUND LINES, INC., AND SABRINA ANDERSON, FIRSTGROUP | : : | |

AMERICA, C.A.V. ENTERPRISES, LLC,   :
AKOS GUBICA AND KAROLLY GUBICA   :
                                      :
                                      :
APPEAL OF: GREYHOUND LINES,      :
INC., AND SABRINA ANDERSON

Appeal from the Judgment Entered January 4, 2017
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): December Term, 2013 No. 02598

BEFORE:   LAZARUS, J., KUNSELMAN, J., and COLINS*, J.

OPINION BY COLINS, J.:                       **FILED APRIL 29, 2019**

These matters are consolidated appeals filed by appellants, Greyhound Lines, Inc. and its bus driver Sabrina Anderson (collectively, the Greyhound defendants), from judgments entered by the Court of Common Pleas of Philadelphia County on a jury verdict in two consolidated multi-plaintiff personal injury cases. For the reasons set forth below, we affirm.

The consolidated actions at issue here arose out of a rear-end motor vehicle accident where a Greyhound bus carrying over 40 passengers collided with a tractor-trailer truck. The accident occurred on Interstate 80 in Pennsylvania near Mile Marker 204 at approximately 1:30 a.m. on October 9, 2013, while the bus was traveling an overnight route from New York City to Cleveland, Ohio. Both actions are suits by bus passengers injured in the accident against the Greyhound defendants. Seven passengers were plaintiffs in the **Livingston** action; 15 passengers and the estate of a deceased

_____

* Retired Senior Judge Assigned to the Superior Court.

passenger were plaintiffs in the **Brown** action. The Greyhound defendants joined the truck driver, Akos Gubica, and the owner of the truck, C.A.V. Enterprise, LLC, (collectively, the truck defendants) as additional defendants.

A jury trial was held in June and July 2016 on the individual claims of four passengers, plaintiff Tatiana Liakh in the **Livingston** action and plaintiffs Faithlee Brown, Elora Lencoski, and Brandon Osborn in the **Brown** action. The trial court ordered that the liability verdict at this trial would apply to all other plaintiffs in the two actions.

Plaintiffs and the truck defendants contended at trial that the accident was caused by the bus driver falling asleep at the wheel. Plaintiffs asserted that Greyhound was both vicariously liable for the bus driver's conduct and also independently liable for the accident because its procedures to prevent fatigued driving were inadequate. The Greyhound defendants contended that the accident was caused by the truck driver driving on the interstate at a speed of only 16 miles per hour without activating his flashing hazard lights, and disputed plaintiffs' claims that its safety procedures were inadequate.

The data recorder on the bus showed that it was traveling at approximately 67 miles per hour at the time of the accident. The bus driver testified that the last thing that she remembered before the accident was that her right leg went numb and would not move off the accelerator and that she reached down with her right arm and blacked out. N.T. Trial, 6/14/16 (A.M.), at 77-81. Several passengers and another driver on the road testified that

shortly before the accident, the bus was swerving in and out of its lane and went onto the rumble strips. N.T. Trial, 6/2/16 (P.M.), at 90-99; N.T. Trial, 6/3/16 (A.M.), at 28-31, 62-67; N.T. Trial, 6/3/16 (P.M.), at 33-36. Two passengers testified that during the trip, the bus driver looked like she was falling asleep. N.T. Trial, 6/3/16 (P.M.), at 33-34; N.T. Trial, 6/9/16 (A.M.), at 8-13.

The evidence was undisputed that the weather at the time of the accident was clear with no visibility problems. The Pennsylvania State Police accident reconstructionist who investigated the accident, Corporal Steven Schmit, testified that there was no physical evidence that the bus driver put on the brakes or took any evasive action before the impact. N.T. Trial, 6/30/16 (A.M.), at 29, 39-40; N.T. Trial, 6/30/16 (P.M.), at 63. In addition, a passenger who was awake and saw the truck through the front window of the bus before the collision testified that the bus did not move to avoid the truck. N.T. Trial, 6/3/16 (A.M.), at 31-33. Plaintiffs introduced expert testimony that the bus driver fell into a micro-sleep, a brief episode of involuntarily falling asleep, in the moments before the accident. N.T. Trial, 6/9/16 (A.M.), at 41-44, 66-70, 72-73; N.T. Trial, 6/9/16 (P.M.), at 91-93. No evidence was introduced by any party that anything other than falling asleep caused the bus driver to black out before the collision.

Corporal Schmit opined that the truck was traveling at approximately 16 miles per hour, a speed at which it was required to have its hazard lights

on. The testimony of the truck driver and plaintiffs' and the truck defendants' experts placed the truck driver's speed in the range of 40-45 miles per hour, speeds at which hazard lights were not required. The evidence was undisputed that the truck driver did not have his hazard lights on at the time of the accident. Plaintiffs' human factors expert testified that even if the truck was traveling at 16 miles per hour without its hazard lights on, a reasonably attentive driver in the bus driver's position could have avoided the accident and that hazard lights would have no effect if the bus driver was asleep. N.T. Trial, 6/7/16 (A.M.), at 50-52, 69; N.T. Trial, 6/7/16 (P.M.), at 64. The Greyhound defendants' human factors expert testified that a reasonably attentive driver would not have had sufficient reaction time to avoid the collision if the truck was traveling at 16 miles per hour with no flashing hazard lights, but admitted that a driver who was unconscious would not react. N.T. Trial, 6/29/16 (P.M.), at 57, 62-84, 137.

The jury returned a verdict in favor of plaintiffs and against the Greyhound defendants, finding that both Greyhound and its bus driver were negligent and that their negligence caused plaintiffs' injuries. The jury assessed 55% of the liability to the bus driver and 45% of the liability to Greyhound on plaintiffs' independent liability claim. The jury found that the truck defendants were negligent, but that their negligence was not a cause of plaintiffs' injuries. The jury also found both Greyhound and its bus driver liable for punitive damages. The jury awarded each plaintiff $500,000 in

punitive damages and awarded plaintiffs Liakh, Brown, Lencoski, and Osborn compensatory damages of $75,000, $125,000, $2.5 million, and $350,000, respectively.

The Greyhound defendants filed post-trial motions seeking a new trial on all issues on 12 grounds and seeking judgment notwithstanding the verdict (JNOV) on plaintiffs' punitive damages claims and plaintiffs' independent liability claim against Greyhound. The trial court denied the post-trial motions and entered judgments on the verdict for plaintiff Liakh, who was the only remaining plaintiff in *Livingston* after settlements with other plaintiffs, and for plaintiffs Brown, Lencoski, and Osborn. Because there remained one other plaintiff in *Brown*, the trial court entered an order making an express determination that the judgment for plaintiffs Brown, Lencoski, and Osborn was a final order under Pa.R.A.P. 341(c). The Greyhound defendants timely appealed both judgments.

In this Court, the Greyhound defendants raise the following six issues for our review: 1) whether the trial court erred in excluding an alleged admission by the truck driver that he was intoxicated; 2) whether the trial court erred in permitting plaintiffs and the truck defendants to argue that an internal Greyhound company rule, Rule G-40, constituted the legal standard of care; 3) whether the trial court erred in failing to grant a mistrial after plaintiffs' counsel asked a Greyhound witness whether Greyhound had set aside over $81 million to pay claims; 4) whether the trial court erred in ruling

that Corporal Schmit could not testify concerning the cause of the accident; 5) whether the bus driver and Greyhound were entitled to JNOV on punitive damages; and 6) whether Greyhound was entitled to JNOV on plaintiffs' independent liability claim against it. Appellants' Brief at 3-4.

We conclude that the trial court did not commit reversible error with respect to its exclusion of the truck driver admission, its denial of JNOV on punitive damages, or its denial of a mistrial, and that the claim of error with respect to Corporal Schmit's testimony was waived.[1] In light of these rulings and Greyhound's vicarious liability for both the compensatory and punitive damages awards against the bus driver, the remaining two arguments, concerning Greyhound's internal rule and Greyhound's independent liability, cannot affect the validity or amount of the judgments, and we therefore do not rule on those issues.

### Exclusion of the Truck Driver Admission

The Greyhound defendants argue that the trial court erred in excluding the testimony of a witness, Matthew Welch, concerning a conversation with the truck driver when the truck driver was detained in a State Police holding cell after the accident for a drug influence evaluation. Our review of this ruling is limited to determining whether the trial court abused its discretion. ***Vetter***

---

[1] We address these issues in a different order than they are listed and argued by the Greyhound defendants in their brief.

*v. Miller*, 157 A.3d 943, 949 (Pa. Super. 2017); *Rohe v. Vinson*, 158 A.3d 88, 95 (Pa. Super. 2016).

> Questions regarding the admissibility or exclusion of evidence are … subject to the abuse of discretion standard of review. Pennsylvania trial judges enjoy broad discretion regarding the admissibility of potentially misleading and confusing evidence. Relevance is a threshold consideration in determining the admissibility of evidence. A trial court may, however, properly exclude evidence if its probative value is substantially outweighed by the danger of unfair prejudice.

*Rohe*, 158 A.3d at 95 (quoting *Whyte v. Robinson*, 617 A.2d 380 (Pa. Super. 1992)).

Welch's excluded testimony was that the truck driver asked him whether the police could get a warrant for a blood test, that the truck driver said that he "was fucked up and a bus ran into the back of his truck and somebody died," and that the truck driver told Welch that he had been "smoking pot" and that "if they tested him he would come up hot." *Brown* R. Item #485 Ex. 7 Welch Dep. at 32-36; *Brown* R. Item #465 Ex. G Welch Dep. at 72, 77-79; *Id.* Ex. H Welch Statement. Welch testified that when the truck driver said he was "fucked up," that was slang for saying that he was "high" or "not normal" and that he understood this to mean that the truck driver "was on drugs at the time." *Brown* R. Item #485 Ex. 7 Welch Dep. at 33; *Brown* R. Item #465 Ex. G Welch Dep. at 79, 86.

Welch, however, also testified that the truck driver did not say when he smoked the pot or that he was intoxicated or impaired at the time of the accident, stating that the truck driver "didn't say I was impaired, like I couldn't

- 8 -

drive or anything." **Brown** R. Item #465 Ex. G Welch Dep. at 78-79, 87. Welch also testified that "[m]aybe he meant that he was fucked up mentally" and that being in an accident where someone died "could fuck you up." **Id.** Ex. G Welch Dep. at 80. There was no evidence that the truck driver appeared intoxicated or impaired at the time of the accident. **Id.** Ex. A Andres Dep. at 47-48; **Id.** Ex. B Schmit Dep. at 112. The drug influence evaluation, performed by the State Police over nine hours after the accident without a urine or blood test, was negative. **Id.** Ex. D.

Because of its prejudicial effect, evidence of alcohol or drug consumption by a person involved in an accident is admissible in a civil negligence action only where there is evidence that reasonably shows intoxication and unfitness to engage in the activity at issue at the time of the accident. **Coughlin v. Massaquoi**, 170 A.3d 399, 404, 408-10 (Pa. 2017); **Braun v. Target Corp.**, 983 A.2d 752, 760 (Pa. Super. 2009); **McKee v. Evans**, 551 A.2d 260, 281 (Pa. Super. 1988) (*en banc*); **Hawthorne v. Dravo Corp., Keystone Division**, 508 A.2d 298, 303-04 (Pa. Super. 1986). A party's admission that he was intoxicated at the time of the accident to a degree that he could not legally drive can satisfy these requirements and is admissible. **Vetter**, 157 A.3d at 951-52 (DUI guilty plea admissible); **McKee,** 551 A.2d at 281 (defendant driver's testimony that he was "probably" intoxicated and "probably" above the blood alcohol limit properly admitted). However, evidence of alcohol or drug consumption, including a party's admission of

alcohol or drug consumption, must be excluded absent evidence of chemical testing sufficient to show intoxication or other evidence of impairment at the time of the accident either in the party's admission or from the testimony of other witnesses. **Rohe**, 158 A.3d at 91-92, 98-101 (admission of evidence of plaintiff's alcohol consumption was reversible error where his blood alcohol level was below the legal intoxication threshold and there was no evidence that plaintiff appeared intoxicated at the time of the accident); **Hawthorne**, 508 A.2d at 303-04 (trial court properly excluded evidence of alcohol and marijuana consumption where marijuana was smoked more than four hours before the accident and blood alcohol level was below legal intoxication threshold).

The Welch testimony did not satisfy the standard for admission of evidence of alcohol or drug consumption. Although the truck driver's statements to Welch are admissions and Welch's lack of personal knowledge concerning the truck driver's drug consumption therefore does not make them inadmissible, the statements were at best ambiguous and indefinite about the truck driver's condition at the time of the accident. As such, they were insufficient to show intoxication or unfitness to drive at the time of the accident, absent other evidence that he was impaired at the time of the

accident. Because there was no such additional evidence, the trial court did not abuse its discretion in excluding Welch's testimony.[2]

### Punitive Damages

The Greyhound defendants argue that they were entitled to JNOV on plaintiffs' punitive damages claims because plaintiffs allegedly did not show that the bus driver and Greyhound had subjective knowledge that the bus driver was too fatigued to drive on the night of the accident and did not show that Greyhound knew that its fatigue prevention program was inadequate. In reviewing this claim of error, this Court must determine whether there was sufficient competent evidence to sustain the verdict, viewing the evidence in the light most favorable to the verdict winner, giving the verdict winner the benefit of every reasonable inference arising therefrom, and rejecting all unfavorable testimony and inferences. *Maya v. Johnson & Johnson*, 97 A.3d 1203, 1212-13 (Pa. Super. 2014).

---

[2] Indeed, given the jury's verdict, it is questionable whether the Greyhound defendants suffered any prejudice from the exclusion of this evidence. Proof that the truck driver was under the influence of marijuana could only have been relevant to the issue of whether the truck defendants were negligent, not whether their negligence caused the accident. The Greyhound defendants' claim that the truck defendants were liable for this accident failed on causation, not negligence; the jury found the truck defendants negligent, but that their negligence was non-causal. *Brown* R. Item #1006, Jury Verdict Sheet at 2.

Under Pennsylvania law,[3] punitive damages can be awarded against a defendant only if the plaintiff shows that the defendant had a subjective appreciation of the risk of harm to which the plaintiff was exposed and acted or failed to act in conscious disregard of that risk. *Hutchison v. Luddy*, 870 A.2d 766, 772 (Pa. 2005); *Dubose v. Quinlan*, 125 A.3d 1231, 1240 (Pa. Super. 2015), *aff'd*, 173 A.3d 634 (Pa. 2017). The mere fact that the defendant knew of a possibility of accidents and did not undertake additional safety measures is not sufficient by itself to support a claim for punitive damages. *Phillips v. Cricket Lighters*, 883 A.2d 439, 446-47 (Pa. 2005).

The bus driver testified that she slept for over seven hours on October 8, 2013 before she began the New York City-Cleveland trip at issue and that she did not feel tired. N.T. Trial, 6/14/16 (A.M.), at 67-72. Although there was evidence that the bus driver knew that she had less than four hours of sleep prior to driving the Cleveland-New York City route the day before the accident, *id.*, at 37-42, 59-63; N.T. Trial, 6/21/16 (A.M.), at 16-18, there was no evidence that she slept less than seven hours on October 8. N.T. Trial, 6/14/16 (A.M.), at 69-71; N.T. Trial, 6/9/16 (P.M.), at 61-62. The bus driver also testified that she was wide awake and not tired while driving and that she

_____

[3] The Greyhound defendants argue this issue under Pennsylvania law and do not dispute in this appeal that Pennsylvania law applies to plaintiffs' punitive damages claims.

- 12 -

lost consciousness suddenly. N.T. Trial, 6/14/16 (A.M.), at 77-81, 83-86; N.T. Trial, 6/14/16 (P.M.), at 83.

The fact that the defendant does not admit knowledge of a danger, however, does not preclude punitive damages. The defendant's subjective appreciation and conscious disregard of the risk of harm can be proved by circumstantial evidence. **Dubose**, 125 A.3d at 1236, 1240-41 (evidence was sufficient to support punitive damages where plaintiff showed that nursing home disregarded physician instructions and violated nursing statute and that patient had numerous bed sores and suffered from malnourishment and dehydration while in the nursing home); **see also Joseph v. The Scranton Times, L.P.**, 129 A.3d 404, 437 (Pa. 2015) (a defendant's state of mind and subjective awareness may be proved by circumstantial evidence).

Here, there was evidence contradicting the bus driver's claim that she was not tired and from which the jury could conclude that the bus driver was aware that she was in danger of falling asleep for a substantial period of time before the accident. There was testimony from bus passengers that the bus driver was drinking Red Bull when they were boarding the bus and that during the trip, more than an hour before the accident, her head was "slumping" for brief periods and "would bob up and down." N.T. Trial, 6/3/16 (A.M.), at 25-28; N.T. Trial, 6/9/16 (A.M.), at 8-13; N.T. Trial, 6/13/16 (P.M.), Patel Videotaped Dep. at 3-4. Bus passengers also testified that the bus had swerved in and out of its lane over an hour before the accident. N.T. Trial,

6/9/16 (A.M.), at 8-11; N.T. Trial, 6/13/16 (P.M.), at 50-52; N.T. Trial, 6/13/16 (P.M.), Reid Videotaped Dep. at 4. Plaintiffs' fatigue expert opined that this swerving behavior occurs when a driver is falling asleep. N.T. Trial, 6/9/16 (A.M.), at 62-67; N.T. Trial, 6/9/16 (P.M.), at 26-28.

This evidence was sufficient for the jury to find that the bus driver was subjectively aware for an extended period before the accident that she was too fatigued to safely drive and that she was in danger of falling asleep at the wheel if she continued to drive. *See Commonwealth v. Huggins*, 836 A.2d 862, 869-70 (Pa. 2003) (holding that it is common knowledge that falling asleep is ordinarily preceded by internal warnings of sleepiness of which the driver is aware and that ignoring such warnings and continuing to drive passengers can show recklessness). There was also evidence that the bus driver knew that if she felt fatigued, she was to pull the bus over at a safe location, such as a rest area, and take a rest or call Greyhound for a replacement driver. N.T. Trial, 6/14/16 (A.M.), at 26, 29; N.T. Trial, 6/14/16 (P.M.), at 54-58; Exs. P-127, GLI-72. It was undisputed that the bus had passed rest areas where the bus driver could have stopped in the hour before the accident. N.T. Trial, 6/17/16 (P.M.), at 38-40. Viewing the evidence in the light most favorable to plaintiffs, as we must on this appeal from a denial of JNOV, we conclude that the evidence was sufficient for the jury to find that the bus driver had a subjective appreciation of the risk that she would fall asleep at the wheel and acted or failed to act in conscious disregard of that

risk. Accordingly, the trial court did not err in denying JNOV on punitive damages with respect to the bus driver.

In contrast, there was not sufficient evidence for the jury to find that Greyhound as a company consciously disregarded a risk that it subjectively appreciated. There was no evidence that Greyhound knew that the bus driver had insufficient sleep on either of the days before the accident or knew that she was fatigued on the night of the accident. The only evidence that Greyhound knew of a problem with this bus driver consisted of a single incident 10 months before the accident, where the bus driver was observed drifting in traffic lanes on a 10-mile stretch of interstate highway, and that Greyhound in response had reminded her of the need to get sufficient rest. Ex. P-53A; N.T. Trial, 6/16/16, Lytle Videotaped Dep. at 6-13; N.T. Trial, 6/14/16 (P.M.), at 104-10; N.T. Trial, 6/20/16 (A.M.), at 38-48. This one incident by itself is not sufficient to show that Greyhound had a subjective appreciation that this bus driver, who had been driving for Greyhound for over 10 years, was likely to fall asleep at the wheel or that it was dangerous to allow her to drive on the night of the accident.

There was evidence that Greyhound knew that its bus drivers were not making stops at 150-mile intervals as referenced in its internal Rule G-40 and that it did not schedule a 150-mile stop or require drivers to make stops every

150 miles.[4] This evidence was likewise insufficient to show subjective appreciation or conscious disregard of the risk by Greyhound. Rule G-40 on its face does not refer to driver alertness or fatigue, and there was no evidence that Greyhound subjectively believed that 150-mile stops should be required to prevent fatigue accidents.[5] Indeed, there was no evidence at trial that it is necessary or appropriate as a fatigue prevention measure to require bus drivers to stop, regardless of whether they feel tired, at 150 miles or at any distance or length of time that had been exceeded on the night of the accident.[6] The Greyhound documents introduced at trial which referred to

_____

[4] The accident occurred 178 miles after the bus left New York City, 28 miles beyond the 150-mile point, and the bus driver had not made any stop prior to the accident.

[5] Rule G-40 provided:
> G-40 CHECKING TIRES/SAFETY STOPS: It is the driver's responsibility to check the tires at all designated tire check points, meal and rest stops. (Abuse of tires will not be tolerated.) Drivers are to stop approximately every 150 miles to check tires and walk around the bus for a safety stop at roadside rests.

Ex. P-1 at 11. Greyhound witnesses testified that the stops required by Rule G-40 were for tire and mechanical checks, not fatigue, and that the 150-mile reference in the rule was based on a type of tires that is no longer in use and on federal regulations that were repealed long before this accident. N.T. Trial, 6/10/16 (A.M.), at 23-26, 36-37; N.T. Trial, 6/10/16 (P.M.), at 45-49; N.T. Trial, 6/13/16 (P.M.), at 17-18; N.T. Trial, 6/17/16 (A.M.), at 11, 38-44; N.T. Trial, 6/17/16 (P.M.), at 5-8, 36-38; N.T. Trial, 6/20/16 (A.M.), at 7-8, 12-13; N.T. Trial, 6/20/16 (P.M.), at 5-9, 104-06. There was no evidence that there was anything wrong with the tires on the bus. N.T. Trial, 6/30/16 (A.M.), at 62-63.

[6] There was no expert testimony or other evidence at trial that mandatory stops every 150 miles or even every 200 miles are a necessary or appropriate

Rule G-40 in connection with driver fatigue only showed that Greyhound recommended that drivers use the Rule G-40 stops to combat fatigue on an as needed basis, if the driver felt less than alert. Exs. P-127, P-130.

The absence of proof of Greyhound's subjective knowledge and conscious disregard, however, does not defeat plaintiffs' punitive damages claim against it. Under Pennsylvania law, an employer is vicariously liable for the reckless conduct of an employee without proof that the employer's conduct satisfies the standard for punitive damages. ***Dillow v. Myers***, 916 A.2d 698, 702 (Pa. Super. 2007) (employer liable for punitive damages based on its truck driver's reckless conduct in overloading truck and driving at high speeds

_____

method to prevent fatigued driving accidents or connecting enforcement of G-40 to fatigue prevention. Federal motor carrier regulations permit bus drivers to drive up to 10 hours, 49 C.F.R. § 395.5(a)(1), and there was no evidence that any federal or state law or regulation required a bus driver to stop at 150 miles to prevent fatigue or for any other reason. N.T. Trial, 6/10/16 (P.M.), at 46-47; N.T. Trial, 6/20/16 (P.M.), at 8; N.T. Trial, 6/15/16, at 77-78. The only expert witness who opined on the issue of how long or what distance it is safe to drive a bus without a break testified that there is no need for a mandatory break at 150 miles or after three hours of driving and that 228 miles was an appropriate distance for a scheduled break, provided that drivers are permitted to stop earlier if they feel fatigued. N.T. Trial, 7/12/16 (A.M.), at 96-106; N.T. Trial, 7/12/16 (P.M.), at 98-99. Plaintiffs' fatigue expert did not opine that mandatory stops every 150 miles or at any set distance or number of hours that had been exceeded on the night of the accident should be required to prevent fatigue-related accidents. Rather, his opinions concerning Greyhound's conduct related to its training of drivers and supervisors and its screening of drivers, and his testimony concerning fatigue impairment periods shorter than the period at issue here involved drivers who had already worked an overnight shift before starting to drive. N.T. Trial, 6/9/16 (A.M.), at 45, 57-60, 70-72; N.T. Trial, 6/9/16 (P.M.), at 40-42, 93-96.

when he knew that he could not properly control it); ***Shiner v. Moriarty***, 706 A.2d 1228, 1240 (Pa. Super. 1998); ***Dean Witter Reynolds, Inc. v. Genteel***, 499 A.2d 637, 643 (Pa. Super. 1985). The amount of punitive damages awarded against the employer may be based on the employer's financial condition, even though liability for punitive damages is based on vicarious liability. ***Dillow***, 916 A.2d at 702-03. There was no dispute that the bus driver's conduct was within the scope of her employment and that Greyhound was vicariously liable for her conduct. N.T. Trial, 7/19/16 (A.M.), at 35, 40; N.T. Post-Trial Motions Argument at 4-5.

Because there was sufficient evidence for the jury to award punitive damages for the bus driver's conduct, Greyhound was liable for punitive damages despite the lack of proof concerning its conduct as a company. ***Dillow***, 916 A.2d at 702; ***Dean Witter Reynolds, Inc.***, 499 A.2d at 643. The trial court therefore did not err in denying Greyhound's motion for JNOV on punitive damages.

### Denial of the Motion for a Mistrial

In the examination of a Greyhound accountant who was called by plaintiffs to testify on Greyhound's financial condition, plaintiffs' counsel asked the witness: "In the year of the crash, did Greyhound contribute or set aside $81,885,000 for claims like the one that we are here for?" N.T. Trial, 6/21/16 (P.M), at 37. The Greyhound defendants immediately objected and moved for a mistrial. ***Id.*** at 37-40, 47-50. The trial court sustained the objection and

instructed the jury that the question was improper, that it was to disregard the question, and that the attorney's question was not evidence. *Id.* at 37, 53. The trial court, however, denied the motion for a mistrial. *Id.* at 47.

Greyhound argues that the trial court's failure to grant a mistrial was reversible error. This Court reviews the trial court's denial of a motion for mistrial for abuse of discretion. *Buttaccio v. American Premier Underwriters, Inc.*, 175 A.3d 311, 321 (Pa. Super. 2017).

A mistrial may be required where counsel makes "irrelevant remarks … which are reasonably likely to have a direct and prejudicial effect on the award of damages." *Narciso v. Mauch Chunk Township*, 87 A.2d 233, 235 (Pa. 1952); *Buttaccio*, 175 A.3d at 321-22 (quoting *Narciso*). Whether a trial court has abused its discretion in refusing to grant a mistrial must be determined by assessing the circumstances concerning the improper question or statement and the precautions taken to prevent it from having a prejudicial effect on the jury. *Maya*, 97 A.3d at 1224; *Dolan v. Carrier Corp.*, 623 A.2d 850, 853 (Pa. Super. 1993); *Rivera v. Philadelphia Theological Seminary of St. Charles Borromeo, Inc.*, 580 A.2d 1341, 1346 (Pa. Super. 1990). In determining whether misconduct by counsel is grounds for granting a new trial where a mistrial was not granted, the court should consider whether the trial court gave a curative instruction, the frequency and nature of the improper questions or statements, and whether the verdict shows any prejudicial effect from the improper conduct. *Ferguson v. Morton*, 84 A.3d 715, 724-26 (Pa.

Super. 2013) (reversing grant of new trial where trial court had taken prompt curative action with respect to counsel's improper statements and jury verdict was supported by the evidence and not excessive).

Here, the improper conduct consisted of a single question in the middle of a seven-week trial and the trial court promptly instructed the jury to disregard the question and gave a curative instruction. While even a single reference to a defendant setting aside over $81 million to pay claims may in some cases be too prejudicial to be cured by the instructions given by the trial court, the impact was substantially tempered in this case by the fact that evidence of Greyhound's wealth was before the jury on plaintiffs' punitive damages claims and the jury heard properly admitted testimony from the same Greyhound witness that Greyhound's assets exceeded its liabilities by $647 million. N.T. Trial, 6/21/16 (P.M), at 54-58, 65.

In addition, the trial court concluded that that jury's verdicts on compensatory and punitive damages were reasonable under the evidence at trial and did not appear to be affected by plaintiffs' counsel's improper question. 2/22/18 Trial Court Opinion at 21.[7] The Greyhound defendants do not point to anything in the jury's verdict that indicates that the jury was affected; they do not contend that the compensatory or punitive damage

_____

[7] While the compensatory damages awarded to plaintiffs Lencoski and Osborn were substantial, their injuries were severe. Plaintiff Lencoski suffered head injuries and multiple fractures and was hospitalized for 40 days and plaintiff Osborn had claims for future medical expenses of $200,000 or more.

awards in this case were excessive nor do they dispute that the liability verdict against the bus driver and against Greyhound on vicarious liability was amply supported by the evidence.

The Greyhound defendants argue that a mistrial was nonetheless required because the question violated a ruling that the trial court had made before the witness's testimony. Denial of a motion for mistrial can be a reversible abuse of discretion where a party intentionally violates a trial court order by referring in front of the jury to a matter that the trial court had excluded as prejudicial. *Mirabel v. Morales*, 57 A.3d 144, 151 (Pa. Super. 2012); *Poust v. Hylton*, 940 A.2d 380, 386-87 (Pa. Super. 2007). Here, the trial court found that the question violated a specific ruling it had made that the jury was not to be told that Greyhound had set aside an amount of money to pay claims. N.T. Trial, 6/21/16 (P.M), at 41, 45-47, 73-74; Post-Trial Motions Argument Transcript at 81. The trial court, however, did not find that plaintiffs' counsel's violation was intentional. N.T. Post-Trial Motions Argument at 85-86. Given the trial court's conclusion that the violation was not intentional, coupled with the absence of evidence of prejudice, we cannot say that the trial court was required to order a new trial simply because plaintiffs' counsel violated its order. *Compare Mirabel*, 57 A.3d at 151 (jury's damage award was excessive).

Because the improper question was a single isolated incident, a curative instruction was given, a substantially higher figure concerning Greyhound's

wealth was properly before the jury, and there is no claim that the compensatory or punitive damage award was excessive or that the liability case against the bus driver was weak, we cannot say that the trial court abused its discretion in declining to set aside the jury's verdict on this ground.

### Exclusion of Corporal Schmit's Causation Opinion

On May 18, 2016, in its rulings on motions *in limine* prior to trial, the trial court ordered that Corporal Schmit could not give expert testimony concerning the pre-crash speed of the truck or the cause of the accident. *Brown* R. Item #826. The Greyhound defendants filed a motion for reconsideration seeking to vacate that order with respect to both the speed and causation opinions. *Brown* R. Item #929. Following oral argument, the trial court vacated its prior order in part and ruled that Corporal Schmit could testify concerning the pre-crash speed of the truck if he was found qualified as an expert on this issue at trial. *Brown* R. Item #951. At trial, the trial court ruled that Corporal Schmit was qualified to testify as an accident reconstructionist and Corporal Schmit testified at length as to his opinion that the truck was traveling at only 16 miles per hour and as to the basis for that opinion. N.T. Trial, 6/30/16 (A.M.), at 19, 21-32, 45-62, 70-72.

The Greyhound defendants argue that the trial court abused its discretion in not vacating the portion of its May 18, 2016 order that barred Corporal Schmit from testifying as to his opinion that the truck's low speed

and lack of hazard lights caused the accident and that the bus driver would not have been able to avoid the accident. We find that this issue was waived.[8]

At the pre-trial argument on their motion for reconsideration, the Greyhound defendants repeatedly represented to the trial court that they were no longer seeking to call Corporal Schmit to testify as to his opinions on causation. Argument Transcript, 5/30/16, at 23-28, 33-35. Counsel for the Greyhound defendants stated:

> He doesn't have to talk about causation.
>
> *            *            *
>
> We certainly will refrain from asking Corporal Schmit what his opinion is as to cause, who's at fault, but he should be able to testify under the law and based on his education, training, experience, as to what his conclusions were from the science, the math.

*Id.* at 24-25. Counsel for the Greyhound defendants further represented:

> THE COURT: I mean, [Corporal Schmit] also testified as a human factors expert, did he not?
>
> MR. BARMEN [Counsel for the Greyhound defendants]: No, he is not a human factors expert.
>
> THE COURT: No. I know he's not. But he made some opinions, he gave some opinions that a human factors expert would give, correct? So that's not what you're asking for? You're asking simply

---

[8] The trial court found this issue waived, but on different grounds than those on which we find waiver. 2/22/18 Trial Court Opinion at 27-28; 4/3/18 Supplemental Trial Court Opinion at 5-6. It is well established that this Court may affirm a trial court's decision if there is a proper basis for the result reached, even if it is different than the basis relied upon by the trial court. *Generation Mortgage Co. v. Nguyen*, 138 A.3d 646, 651 n.4 (Pa. Super. 2016); *In re Estate of Rood*, 121 A.3d 1104, 1105 n.1 (Pa. Super. 2015).

for me to allow him to testify as an accident reconstructionist, assuming that I believe he's been properly qualified to testify to that, and applying the sound scientific principles that an accident reconstructionist used to determine that the speed of the tractor-trailer was X.

MR. BARMEN: Yes, Your Honor.

THE COURT: And that's it?

MR. BARMEN: Yes, Your Honor.

＊          ＊          ＊

THE COURT: …[The Greyhound defendants] don't want me to consider my order with regard to anything other than his testimony as an accident reconstructionist based on sound scientific principles that he applied and that he learned through his experience and training to determine the speed of the tractor-trailer, correct? That's the limit of your motion for reconsideration?

MR. BARMEN: Yes, Your Honor.

*Id.* at 27-28. In addition, the Greyhound defendants represented to the trial court that if the court was not excluding Corporal Schmit's opinion on the speed of the truck, it was unnecessary for the court to hold a hearing on the methodology in reaching his opinions. *Id.* at 34.

Following this argument, the Greyhound defendants did not seek any further ruling on Corporal Schmit's testimony before trial and did not argue at trial that he should be permitted to testify as to causation of the accident or the ability of the bus driver to avoid the accident. *See* Appellant's Brief Ex. G (stating that the only preservation of this issue before its post-trial motions was its May 2, 2016 opposition to plaintiffs' motion *in limine*). Instead, they called another expert witness, a human factors expert, who testified that if the truck driver was driving at a speed of 16 or 21 miles per hour without his

hazard lights on, a reasonably attentive driver in the bus driver's position would not have been able to avoid the accident. N.T. Trial, 6/29/16 (P.M.), at 57, 62-84.

Statements by a party's counsel that the party has no objection to a ruling constitute an affirmative waiver that bars the party from raising that issue in post-trial motions or on appeal, even if the party had previously fully raised and preserved the issue. *Jones v. Ott*, 191 A.3d 782, 791-92 (Pa. 2018) (claim that trial court erred in omitting requested jury charges was barred by waiver where party's counsel stated to trial court following the jury charge that he had no objection to the charge).[9]

> Trial lawyers waive claims, objections, and issues all the time, and do so upon all sorts of rationales. These waivers may occur for countless strategic or tactical reasons, or may be based upon intervening developments in the trial record, or may reflect simple inadvertence or error. Our trial courts must be free to accept such unequivocal statements of counsel as consequential and binding.

*Id.* (footnote omitted).

That is precisely what occurred here. Because the Greyhound defendants unequivocally stated to the trial court that they no longer sought to have Corporal Schmit testify as to any opinions other than the speed of the truck, they waived any claim of error with respect to exclusion of his testimony

---

[9] While parts of this opinion are a plurality opinion, the portions cited herein were joined in by a majority and represent an opinion of the Court. *See* 191 A.3d at 793 (Saylor, C.J., concurring).

as an expert witness on other issues and are barred from seeking reversal of the trial court's judgments on this basis.

## Rule G-40 and Greyhound's Independent Liability

The only remaining issues that the Greyhound defendants have raised in this appeal are claims that the trial court erred in permitting plaintiffs and the truck defendants to argue that Rule G-40 constituted the legal standard of care, and that Greyhound was entitled to JNOV on plaintiffs' independent liability claim because plaintiffs' fatigue expert's testimony was insufficient to show that it was negligent in its fatigue management.

Both of these issues relate solely to plaintiffs' independent liability claim against Greyhound. The only prejudice that the Greyhound defendants contend that they suffered from the extensive evidence and argument concerning enforcement of Rule G-40 is that the jury was led to believe that it could treat Rule G-40 as the legal standard of care and base liability solely on the fact that Greyhound did not enforce that rule. Appellants' Brief at 37-38, 40-47; Appellants' Reply Brief at 13-17.

Whether Greyhound was erroneously found liable based on Rule G-40 and whether there was sufficient evidence to find that Greyhound was negligent in its fatigue management have no effect on the jury's finding that the bus driver was negligent, that her negligence caused the accident, or that she acted in conscious disregard of a risk that she subjectively appreciated. Rather, the verdict against the bus driver turned on the factual questions of

whether the bus driver fell asleep at the wheel and whether she knew that she was too tired to drive or was in danger of falling asleep before the accident. Regardless of whether Rule G-40 required mandatory 150-mile stops, it was undisputed that Greyhound's bus drivers were instructed to stop if they felt fatigued and that the bus driver received those directions. N.T. Trial, 6/14/16 (A.M.), at 26, 29; N.T. Trial, 6/14/16 (P.M.), at 54-58; Exs. P-127, P-130, GLI-72.

As was discussed above, there is no dispute that the bus driver's conduct was within the scope of her employment and that Greyhound is vicariously liable for her conduct. Greyhound is therefore liable to plaintiffs for the full amount of both the compensatory and punitive damages awards and would remain fully liable for the judgments, even if the jury's verdict on Greyhound's independent liability were set aside. ***Dillow***, 916 A.2d at 700-01 n.4, 702; ***Costa v. Roxborough Memorial Hospital***, 708 A.2d 490, 493 (Pa. Super. 1998). Any error with respect to Greyhound's independent liability therefore has no effect on the judgments.[10]

_____

[10] We do not suggest that the vicarious liability and independent liability claims were inherently duplicative or that plaintiffs could not properly pursue both of these claims. ***See Scampone v. Highland Park Care Center, LLC***, 57 A.3d 582, 591, 598 (Pa. 2012). Here, however, because the compensatory and punitive awards on both claims are identical, the elimination of one of the alternative bases of verdicts would have no effect on the judgments against Greyhound.

As discussed above, we have found no reversible error with respect to the judgments against the Greyhound defendants based on the bus driver's conduct. The Greyhound defendants have not set forth any basis from which we could conclude that reversal with respect to Greyhound's independent liability would have any effect on any party. Accordingly, we need not and do not address whether the trial court erred in its rulings concerning Rule G-40 or whether there was sufficient evidence to support an independent liability claim against Greyhound for its own actions as a company.

## Conclusion

For the foregoing reasons, we conclude that the trial court did not abuse its discretion in its exclusion of the truck driver's admission or its denial of a mistrial, that the evidence was sufficient to support the jury's punitive damages verdict, and that the Greyhound defendants' claim of error with respect to expert testimony is barred by waiver. We further conclude that in light of these rulings, the other claims of error in this appeal would have no effect on the judgments, even if we found them meritorious. Accordingly we affirm the trial court's judgments.

Judgments affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>4/29/19</u>